## McKibbin vs. Fort Smith.

1. Town Council: *May abate nuisance without judicial proceedings.*

    By sec. 13 of the act of March 9, 1875, for the incorporation and government of municipal corporations, a town council has power to prohibit the erection of wooden buildings in certain districts of the town as a precaution against fire; and if such building be erected in violation of an ordinance inhibiting it, the council may promptly remove it, without any prosecution or judicial proceedings of any kind against the owner of the building.

2. Injunction. Damages: *Against city for wrongful removal of building.*

    Where a building has been removed, or is about to be removed, by a police officer under an order of the town council, when, in fact, the owner has not, in its erection, violated any ordinance of the town inhibiting it, he may recover damages against the town for the removal, or have an injunction against the threatened removal, as the case may be.

APPEAL from *Sebastian* Circuit Court.

Hon. J. A. Rogers, Circuit Judge.

*Du Val & Cravens*, for appellant.

*Brizzolari, contra.*

Harrison, J. This was a complaint in equity by David A. McKibbin against the town of Fort Smith to restrain or enjoin the removal, by the chief of police, of a wooden or frame building from within the fire limits of the town.

The complaint alleged that the building was erected previous to the passage of the ordinance establishing the fire limits, but that the plaintiff having, since its passage, made additions to it, though not over ten feet high nor in violation of the ordinance, the town council had ordered its removal out of the limits, and directed the chief of police if

McKibbin vs. Fort Smith.

not removed by the plaintiff in ten days after the sixth day of August, 1878, to remove it at his expense.

The defendant, in her answer, denied that the building was erected previous to the passage of the ordinance; but averred that it was erected by the plaintiff since, under pretense of repairing and making additions to an old building, that was taken down to give place to it.

The facts of the case disclosed by the pleadings and evidence were these: The ordinance establishing the fire limits of the town was passed on the thirteenth day of March, 1876, and prohibits the erection within the limits of any building, or any addition to a building, more than ten feet high, unless the outer walls thereof be made of brick and mortar, of iron, or of stone and mortar; and it declares any building, or addition to a building, erected in violation of the ordinance a nuisance, and it is made the duty of the chief of police to remove, or abate, the same in such manner as the council may direct, at the expense of the owner.

At the time of the passage of the ordinance there was, on lot No. 2, block No. 25, on Garrison avenue, within the limits designated by it, a wooden or frame building, thirteen feet wide, twenty-six feet long and thirteen feet high, and the roof of which was covered with clapboards. This building was, in the month of July, 1878, taken down by McKibbin, the owner, all except a side wall, and he constructed upon the lot, with new material and such of the old as answered the purpose, a wooden or frame building nineteen or twenty feet wide and fifty-two feet long. The wall left standing formed part of one of the side walls, and the fence on the alley, to which the building was extended, which was cased with the plank of the old walls taken down, was made to serve as the other—that part of the new roof over the site of the original building was covered

with shingles, and was twelve feet high from the ground. The height of the extensions was only ten feet. The sills and sleepers, and the flooring, with the exception of five or six planks in width, extending from one end to the other of the building, were of new material. The old rafters were used on the side the wall left standing was on, and were spliced to make them the necessary length; and the old door and door frame were used in the rear end, and the old sleepers for collar beams. With the exception of three or four planks to replace decayed ones, the wall left standing remained as it was. The front was entirely new, and a wooden shed, or awning, fifteen feet wide, and at the highest part twelve feet, in front, over the street, extended the width of the building.

The court dismissed the complaint and the plaintiff appealed.

It can not be correctly said that the old building was repaired. The only integral portion of it remaining is the wall left standing, but which forms a portion only of the wall of the present building. As a structure it was completely destroyed, and that now on the lot is manifestly a new and another building. *Bishop on Stat. Crimes*, sec. *208.*

1. TOWN COUNCIL: May abate nuisance without judicial proceedings. It is insisted by the appellant that the action of the town council in ordering the removal of the building without a trial to determine whether it had been erected in violation of the ordinance, and opportunity afforded him to be heard, was without the sanction or authority of law, and in violation of that provision of the Bill of Rights which declares that no person shall " be deprived of his life, liberty or property, except by the judgment of his peers, or the law of the land."

Section 13, of the act of March 9, 1875, for the incorpo-

ration and government of municipal corporations, is as follows: " Sec. 13. They (the city and town council) shall have power to regulate the building of houses; to make regulations for the purpose of guarding against accidents by fire, and to prohibit the erection of any building, or any addition to any building, more than ten feet high, unless the outer walls thereof be made of brick and mortar, or of iron, or of stone and mortar; *and to provide for the removal of any building or additions erected contrary to such prohibition.*"

Chief Justice SHAW, in *Commonwealth v. Alger, 7 Cush., 84,* says: " We think it is a settled principle growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property in this commonwealth * * * is derived directly or indirectly from the government and held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature under the governing and controlling power vested in them by the constitution may think necessary and expedient. This is very different from the right of government to take and appropriate private property to public use, whenever the public exigency requires it; which can be done only on condition of providing a reasonable compensation therefor. The power

we allude to is rather the police power—the power vested in the legislature by the constitution, to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same." And he further remarks that " it is much easier to perceive and realize the existence and sources of this power than to mark its boundaries, or prescribe limits to its exercise. There are many cases in which such a power is exercised by all well-ordered governments and where its fitness is so obvious that all regulated minds will regard it as reasonable. Such are the laws to prohibit the use of warehouses for the storage of gunpowder near habitations or highways; to restrain the height to which wooden buildings may be erected in populous neighborhoods and require them to be covered with slate or other incombustible material; to prohibit buildings from being used for hospitals for contagious diseases, or for carrying on of obnoxious or offensive trades; to prohibit the raising of a dam and causing stagnant water to spread over meadows near inhabited villages, thereby raising obnoxious exhalations injurious to health and dangerous to life."

Judge STORY says: " All the property and vested rights of individuals are subject to such regulations of police as the legislature may establish with a view to protect the community and its several members against such use or employment thereof as would be injurious to society or unjust toward other individuals." 2 Sto. on Constitution, sec. 1954.

Judge DILLON says: " Many of the powers most generally exercised by municipalities are derived from what is

McKibbin vs. Fort Smith.

known as the *police power* of the state, and are delegated to them to be exercised for the public good. Of this nature is the authority to suppress nuisances, preserve health, prevent fires, to regulate the use and storing of dangerous articles, to establish and control markets and the like. * * * It may be observed that every citizen holds his property subject to the proper exercise of this power, either by the state, legislature directly, or by public corporations to which the legislature, may delegate it." *Dill. Munic. Corporations, sec. 93.*

And the supreme court of New York, in the case of *Vanderbilt v. Adams, 7 Cow., 349,* say : " The sovereign power in the community therefore, may and ought to pre·scribe the manner of exercising individual rights over property. It is for the better protection and enjoyment of that absolute domain which the individual claims. The power rests in the implied right and duty of the supreme power to protect all by statutory regulations, so that, on the whole, the benefit of all is promoted. Every public regulation in a city may and does, in some sense, limit and restrict the right that existed previously. But this is not considered an injury. So far from it, the individual, as well as others, is supposed to be benefited. It may then be said that such a power is incident to every well regulated society, and without which, it could not well exist. Is there a doubt that the legislature have a right to authorize a road through· the wild lands of A without his consent? This right has been assumed and acted upon without a question, ever since we became an independent government. No compensation is allowed in such cases to the owner. Can he defeat the operation of the law, by saying that private right is invaded? The doctrine has not yet been advanced. Such a law, I apprehend, is con-

stitutional and obligatory; because in many cases, necessary for the public benefit, and not deemed injurious to the individual whose land is taken." *Baker v. Boston, 12 Pick., 184; Commonwealth v. Tewkesbury, 11 Met., 55; Wadleigh v. Gilman, 12 Maine, 403.*

In the case of *Harvey v. Dewoody et al., 18 Ark., 252,* the mayor, councilmen and constable of the town of Des Arc, being sued, individually, for pulling down the plaintiff's house, justified under an ordinance of the town, declaring the house—which had long been unoccupied except by transient persons, and in such a manner as to endanger the town by fire, and also to make it offensive to the citizens of the town—a nuisance; and providing that if the plaintiff did not, within a specified time, after notice, abate the nuisance, the constable should proceed to do so—and their defense was held good. The court say : "It is clear, we think, from the plea, that the mayor and councilmen had the right to have the nuisance complained of, removed or abated, in some one of the modes provided by law, even though, in doing so, it should be found necessary to destroy the house, or tenement—as was the case in the instance at hand. The measure was regarded and esteemed by the corporate authorities as rather of a mixed character, partly sanitary, and partly economical, to preserve other adjacent property in the town ; and, as such, we hold that every citizen enjoys his property, subject to such regulations. Police regulations to direct the use of private property, so as to prevent its proving pernicious to the citizens at large, are not void, although they may, in some measure, interfere with private rights without providing for compensation."

Summary proceedings, without the usual forms of a regular judicial trial, have often been held valid as falling

McKibbin vs. Fort Smith.

within the police powers of the government. *Blair & Hutchinson and Smith v. Forehand, 100 Mass., 136; City of Salem v. Eastern Railroad Company, 98 Mass., 431; The American Print Works v. Lawrence, 1 Zab. (N. J.), 248; Underwood v. Green, 3 Robt., 86; Harvey v. Dewoody et al., supra.*

If the legislature may, as it has done, delegate to the town council authority to prohibit the erection of wooden buildings in certain districts of the town, as a precaution against fires, it may, as it has also expressly done, clothe it with the power necessary to accomplish or effect the end in view.

The only effective remedy for the evil done by a violation of the ordinance, is to promptly remove the building. A few days' delay might be attended with most disastrous consequences to the community; whilst waiting a judicial determination the town might be destroyed.

In a case where there has, in fact, been no violation of the ordinance, yet the building has been removed by the chief of police under an order by the council, or he is under such an order threatening to remove it, the owner would be entitled to recover damages from the town for the trespass, or to an injunction to prevent the threatened waste, as the case may be.

2. INJUNCTION. DAMAGES: Against city for wrongful removal of building.

We are, therefore, of the opinion that no prosecution or judicial proceedings of any kind against the owner of the building was necessary or proper before the council could order its removal.

It is also objected that the ordinance directs removal of the buildings, if not removed by them, at the expense of the owners.

It is the duty of the appellant himself to remove the

building, and perhaps he will prefer to do it. It will be time enough to consider that question when such expense has been incurred.

The decree is affirmed.