## LITTLE ROCK v. WRIGHT.

### Opinion delivered November 4, 1893.

1. *Homestead—Encumbrance—Dedication of street.*

   A married man who in 1870 laid off his homestead into blocks, lots and streets for the purpose of sale, reserving as his homestead the block on which his residence stood, did not, by dedicating the streets to public uses, create an encumbrance of his homestead in violation of sec. 2, art. 12, Const. 1868, which provided that "the homestead of any resident of this State who is a married man or head of a family shall not be encumbered in any manner while owned by him."

2. *Streets—Acceptance of dedication.*

   An offer to dedicate streets in a tract of land adjoining a city of the first class by laying it off into blocks, lots and streets was accepted by the act of April 28, 1873, providing that all tracts of land which adjoin a city of the first class, and which is or shall be laid off into lots or blocks, shall be a part of the city.

3. *Adverse possession—Public street.*

   Where a city has accepted the dedication of a public street, subsequent continued possession by the dedicator will not be presumed adverse to the city, nor the city's right lost by delay for more than seven years in opening up the street for public use, in the absence of proof of adverse holding.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

*Morris M. Cohn*, City Attorney, for appellants.

1. Wright had the right to contract or limit his homestead claim, and did so by his bill of assurances. There is no proof that his homestead, including the streets, is not far in excess of the value allowed by the Constitution of 1868. The homestead was limited by that constitution. In that respect it differs from the Constitution of 1874. See Const. 1868, art. 12, sec. 3; Const. 1874, art. 9, secs. 4, 5.

2. The change from farming to urban property reduced the homestead claim. 5 Kas. 592-5. Espe-

cially when accompanied by bill of assurance and plat. 12 Iowa, 516, 519; 17 Tex. 74; 51 Ark. 527, 530. In 37 Ark. 298, 307, it was held that a homestead owner might reduce its limits or bounds to any *reasonable* extent.

3. Under the Constitution of 1868, the homestead could be sold and conveyed, or any part of it. 37 Ark. 298; 12 Iowa, 516, 519; 51 *ib.* 527; 2 Dill. 320; Thomps. Homest. sec. 453. A dedication by bill of assurance is a conveyance, and not an *incumbrance.* Elliott, Roads and Streets, 89 and note; 12 Iowa, 516; 17 Tex. 74, and Arkansas cases, *supra.*

4. By act of April 28, 1873, the plotting and creation of an annexation to a city made it a part of said city without further action by the city. Acts 1873, p. 287; 42 Ark. 66; 44 *id.* 536; 36 *id.* 166.

5. The bar of the statute cannot avail appellees. Elliott, Roads, 89; 67 Iowa, 39; 24 N. W. Rep. 582; 16 Oregon, 500; 19 Pac. Rep. 610. A city is under no obligation to open streets *at once,* nor until it needs them for use. 19 Pac. Rep. 614; Elliott, Roads and Streets, 90 and note; 80 Ala. 489; 2 So. Rep. 155; 9 *id.* 584; 62 Mich. 29; 28 N. W. Rep. 775; 62 Mich. 46; 28 N. W. Rep. 785. None of the acts done by appellees were adverse or inconsistent with the city's rights to open the streets *whenever the public necessities required them.* Elliott, Roads and Streets, 669 and note 3; 71 Cal. 21; 11 Pac. Rep. 808.

*T. B. Martin* and *Geo. L. Basham* for appellees.

1. The law of abandonment of the homestead, or any part thereof, is too well settled in this State for argument.

2. Injunction was the proper remedy against a municipal corporation to prevent a trespass. 2 Dill. Mun. Corp. sec. 662; 12 B. Mon. 610; 24 Iowa, 283.

3. Under the Constitution of 1868 the homestead could not be *encumbered.* A highway or street is a

legal incumbrance.    Elliott, Roads and Streets, p. 553 ;
2 Mass. 97 ; 11 Am. Rep. 426 ; 50 Mo. 496 ; 1 Ala. 645 ;
10 Conn. 422 ; 51 Ill. 206 ; 3 Gray, 516 ; 36 Me. 557 ; 59
*id*. 322 ; 3 N. H. 335 ; 27 Vt. 739 ; 48 Ind. 52.

4.    Municipal corporations are bound by the statute
of limitations.    41 Ark. 45 ; 12 B. Mon. 610.    These
decisions apply where the grantor remains in possession.
Wood on Lim. sec. 265, p. 551 ; 44 Wis. 498 ; *Ib*. 111 ;
24 Iowa, 283.    By section 1, Acts 1873, p. 287, Wright's
addition became a part of the city, from which period,
at all events, the statute began to run.    The evidence
clearly shows the possession to be adverse, and the city
is barred.

BATTLE, J.    The city of Little Rock, through its
council, by a resolution, on the 26th day of March, 1889,
directed its engineer to open Gaines street and Marianna
Avenue, on the South and West sides of block three, in
Wright's addition to said city.    Lucy M. Wright, Sal-
lie L. Wright, Weldon E. Wright and Ida M. Wright
brought this action in the Pulaski chancery court, against
the city and F. J. H. Rickon, its engineer, to restrain
them from carrying the resolution into effect.    The
court made a temporary order restraining the defendants
from enforcing the resolution, and, on final hearing, made
the injunction perpetual, and the defendants appealed.

The facts in the case are substantially as follows :
" In 1870, Weldon E. Wright owned a tract of land
adjoining the city of Little Rock, on the South, contain-
ing about one hundred acres.    The same was at that
time, and for many years previous had been, the home-
stead of Wright and his wife, Lucy M. Wright, and his
children, the appellees."    On the 5th of February, 1870,
Weldon E. laid the same off into blocks, lots, streets and
alleys, made a plat thereof and called it " Weldon E.
Wright's Addition to the city of Little Rock ;" and
executed and attached to the plat a " bill of assurances,"

his wife joining in the execution thereof. In the "bill of assurances" the streets, as shown in the plat, were dedicated to the public use, including Gaines Street on the west, and Marianna Avenue on the south, of block 3 in the addition.

Under the provisions of section 1 of an act of the legislature of April 28, 1873, the addition became a part of the city of Little Rock. At the time the "bill of assurances" was executed, the dwelling house of Wright was situated on block 3 of the addition, where he then resided with his family, and where he continuously resided with them up to the time of his death, in the spring of 1884, and where his family, appellees, have ever since continuously resided. Gaines street on the west, and Marianna avenue on the south, of block 3 were, at the time of the filing of the "bill of assurances," inclosed under a common fence, and formed a part of the homestead. Two of the houses, constituting a part of the homestead, were then, and are now, on the line of so much of the streets as were enclosed. The parts of the streets so enclosed, and the two houses, were used and occupied by Weldon E. from the time the "bill of assurances" was executed until he died, and by appellees, from his death to the institution of this action, as a part of the homestead.

Upon this state of facts appellees contend that the city has no right to use the ground in controversy as streets, for the following reasons :

1. Because it was a part of the homestead of Weldon E. Wright at the time he attempted to dedicate it to public use, and could not, under the constitution of 1868, which was then in force, be encumbered by streets.

2. Because the offer to dedicate had never been accepted on the part of the public.

3. And because they had held adverse possession of it, under claim of title, for the statutory period.

If this contention be true, they were entitled to the relief sought. The rule is, an injunction will not be granted to restrain a mere trespass, because, ordinarily, the party injured has a full and adequate remedy at law. But this rule is not observed in cases of municipal corporations, when they are about to make an effort to take possession of private property "upon the pretense that it has been dedicated as a public street or highway by the owner, when, in fact, there has been no dedication, or, if it ever occurred, the easement has been lost through non-user, and abandoned by the city, and by a continuous and adverse possession on the part of the owner of the fee for" the statutory period of limitation. In such cases an injunction should be granted to the owner to prevent the officers of the corporations from making the attempt, upon the ground that the attempt, if successful, would be an appropriation of the freehold, and a destruction of the value of the land in the character in which it was enjoyed ; also upon the ground, that private persons are unable to contend with corporations upon equal terms, and for the purpose of quieting the title and possession. *McKibbin* v. *Fort Smith*, 35 Ark. 352, 359; *Manchester Cotton Mills* v. *Manchester*, 25 Grat. 825; 1 High on Injunctions (3rd ed.), sec. 349; 2 *id*. secs. 1272, 1273, and cases cited

It is true that cities of the first class are authorized, by an act entitled "An act for the better government of cities of the first class, and to confer enlarged and additional powers on such cities, and to provide in what manner changes may be made in the number of aldermen and wards of such cities," approved March 21, 1885, to prevent or remove encroachments or obstructions upon any of the streets. But it did not confer upon them the authority to tear down and remove the enclosures and houses, and take possession of the lands, of the citizens, for public use. The legislature could not confer such

authority, except in accordance with that provision of the constitution which declares that "private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." In exercising the power to prevent or remove encroachments or obstructions upon the streets, they should avoid trespassing on the grounds of the citizen.

But is appellees' contention true? Could Wright dedicate any part of his homestead to the public for a street, under the constitution of 1868? It is insisted that he could not, because that constitution declared that "the homestead of any resident of this State who is a married man or head of a family shall not be encumbered in any manner while owned by him," except in certain cases not here in question. The reason given for this contention is, that a street is an encumbrance, within the meaning of the constitution. If this be true, it does not follow that the dedication for a street was in violation of the constitution then in force ; for it was held in *Klenk* v. *Knoble*, 37 Ark. 298, that the owner of a homestead might, under the constitution of 1868, mortgage such a part of it as was not necessary to the enjoyment of it as a homestead. The court in that case, in speaking of the the constitution of 1868, said : "The constitution does not limit the *minimum* extent of the lot. The resident may make his homestead as small as he pleases, provided it be not so contracted as to show an intent to evade the law, by making it too small for actual use as a homestead. * * * He was not required by any policy to retain forever, as part of his homestead, more of it than he might deem reasonably sufficient, and might determine to hold and use the balance as other property. He might manifest his intention in any sufficient way, without being driven to visible separation by walls. Any facts or circumstances showing a permanent design may be considered. As it

was a thing, in itself, which he might properly do, it would show no intent to evade the law to declare it, in a mortgage of the property, so divested of its homestead character. With this qualification that the amount retained must appear reasonable, and *bona fide*, and not colorable."

Weldon E. Wright was not prohibited by any law from conveying his homestead, or any part of it. He had the right to do so. For the purpose of selling it for the highest prices he could realize, he laid it off into blocks, lots and streets. This purpose was clearly legitimate. Having the power to reduce it below the constitutional *maximum*, he could not have violated the constitution by an effort to do so by legitimate means. Had he been successful in his undertaking, his property would have advanced in value as he sold the lots into which it was divided, and would, probably, have been far more useful and profitable than it would otherwise have been. In this view of the facts, "the amount retained" as a homestead by the reservation of a block for that purpose was not only *bona fide*, but reasonable; and comes within the qualification of the right to encumber, as stated in *Klenk* v. *Knoble*.

Was the offer to dedicate lands for streets accepted? The act of the legislature of April 28, 1873, entitled "An act to provide for adding territory to cities of the first class," provided that "all tracts of land or territory which adjoins or is adjacent or contiguous to a city of the first class, and which is or shall be laid off or subdivided into lots, or blocks, or additions, shall be and the same is hereby declared to be a part of such city, and shall be subject to all the *power, authority, jurisdiction*, franchises, liabilities and ordinances governing such city; and such territory shall become incorporated with and a part of such city." This was an acceptance of the offer to dedicate. The declaring the tract of land

which was laid off into blocks and lots a part of the city made it a part of the city as laid off. *Moore* v. *City*, 42 Ark. 68: *Demopolis* v. *Webb*, 25 American & English Corporation Cases, 268, 271; *DesMoines* v. *Hall,* 24 Iowa, 234, 242, 243; *Requa* v. *Rochester*, 45 N. Y. 129, 131; *Mayor* v. *Morris Canal & Banking Co.* 1 Beasley, 547, 560; *Derby* v. *Alling.* 40 Conn. 410, 434, 435; *Hoboken Land, etc. Co.* v. *Mayor*, 7 Vroom, 546; Elliot's Roads & Streets, pp. 116, 117.

The act of April 28, 1873, provided that the land laid off into blocks and lots shall "be subject to all the power, authority," and "jurisdiction" of the city. Section 3209 of Gantt's Digest, then in force, in defining this "power, authority," and "jurisdiction" in part, provided that "the city council shall have the care, supervision and control of all the public highways, bridges, streets, alleys, public squares and commons within the city, and shall cause the same to be kept open and in repair, and free from nuisances." So the act, by express words, subjected the land laid off into streets to the power, authority, and jurisdiction conferred on cities by this section, and thereby accepted the offer of Wright to dedicate, and made the land dedicated public streets.

It is true that section 738 of Mansfield's Digest, which is a re-enactment of section 3210, Gantt's Digest, provides that "no street or alley, which *shall hereafter* be dedicated to public use by the proprietor of ground in any city, shall be deemed a public street or alley, or to be under the care or control of the city council, unless the dedication shall be accepted and confirmed by an ordinance specially passed for that purpose." But this statute was passed on the 9th of March, 1875, is prospective in its operation, and did not divest the public ways in Wright's Addition of their character as streets.

Has the right of the city to the streets in question

been lost by non-user or adverse holding? What is adverse possession? No possession consistent with the right of the true owner can be adverse to him. In this case the land was dedicated to public use for streets, but it remained enclosed and obstructed after the dedication. The city had the right to postpone the removal of the obstructions, and the opening of the streets, until such time as its resources permitted, and the public necessities demanded. As the city only acquired the right to use the land as streets, and Weldon E. reserved all other rights, he had the authority to use the land for pasturage, or the growth of crops, or for any other purpose consistent with the right of the city, until the authorities of the city, in the lawful exercise of its power, determined to open the streets. *Henshaw* v. *Hunting*, 1 Gray, 203; *Bartlett* v. *Bangor*, 67 Me. 460; *Lake View* v. *LeBahn*, 120 Ill. 92; *Reilly* v. *Racine*, 51 Wis. 526; *Derby* v. *Alling*, 40 Conn. 410; *Meier* v. *Portland Cable Co.* 16 Oregon, 500; *Oswald* v. *Grenet*, 22 Texas, 94; *Shea* v. *Ottumwa*, 67 Iowa, 39.

The city has not lost its right by adverse posssession. It is true that R. J. Lea, a witness, testified that Weldon E. Wright, in his life time, and appellees, since his death, have occupied the land dedicated for the streets in question, openly, notoriously, continuously, and adversely, under claim of title to the same for more than seven years. But he testified as to the acts of ownership, control, and possession done by the claimants, which were such as they had the authority to do, and were consistent with the right of the city. These acts were not sufficient to show adverse possession. The statement of Lea as to the possession being adverse was clearly an expression of an opinion, and is not competent evidence.

It was within the province of the city council of Little Rock to determine when the streets in question

should be opened. Mansfield's Digest, section 737. It has done so. In the absence of evidence proving the contrary, the presumption is, it has not abused its power in so determining. The evidence fails to show such abuse.

The decree of the chancery court is therefore reversed, and appellees' complaint is dismissed.