City of SEARCY, ARKANSAS *v.* Ora Mae
ROBERSON, Verna Odean ROBERSON and
BRUCE ROBERSON

73-280                                                511 S.W. 2d 627

Opinion delivered July 22, 1974

*Lightle, Tedder & Hannah,* for appellant.

*Pollard, Cavaneau & Hatfield,* for appellees.

CONLEY BYRD, Justice. This is an appeal by the City of Searcy, Arkansas from a circuit court judgment entered on a jury verdict adverse to the city in which the city claimed a 50 foot right-of-way for a street and the appellees, Robersons, claim title to a part of it by adverse possession.

The present City of Searcy was an incorporated town prior to 1891 and 1859 Watkins and Quarles Addition was platted as a part of the Town of Searcy. The Watkins and Quarles Addition consisted of the NW ¼, Sec. 11, Twp. 7 N., Range 7 W., and the plat of the Addition as certified by the county surveyor under date of July 10-15, 1859, contains four parallel streets, each of them being designated as 50 feet wide and running east and west across the Addition. The Addition as platted contains 24 numbered plots numbered consecutively from the northwest corner of the Addition, with plots 1, 2, 3, 4, 5 and 6 constituting the first tier of plots on the north side of the Addition. These plots are bounded on the north by the section line and on the south by Race Street. The next tier of plots immediately south of Race Street is numbered consecutively from east to west as plots 7, 8, 9 and 10. Plot No. 7 is hereafter referred to as "Block No. 7" and contains the area involved in this case. Block No. 7 is designated on the plat as fronting 13.14 chains on the south side of Race Street and 13.11 chains on the north side of Market Street. It extends south 5.53 chains from Race Street

to Market Street which is the next street south of Race Street. It was stipulated at the trial that the 50 foot right-of-way for Race Street as platted was dedicated to public use by recorded plat and the sale of lots under plat description.

The litigation in this case arose when the City of Searcy attempted to widen Race Street to the full width of its 50 foot right-of-way as originally platted, and the appellees, Ora Mae Roberson, Verna Odean Roberson and Bruce Roberson resisted the city in its efforts to widen Race Street. The city filed its complaint against the Robersons alleging and praying relief as follows:

"1. That plaintiff is a City of the First Class having been duly incorporated under the laws of Arkansas.

2. That plaintiff is the owner of a fifty (50) foot right-of-way to be used and maintained as a street known as East Race Avenue through the Watkins and Quarles Addition to the City of Searcy, Arkansas; that the plat of Watkins and Quarles Addition to the City of Searcy, Arkansas, has been duly filed of record and East Race Avenue, including the 50 foot right-of-way has been duly dedicated to the public.

3. That defendant Ora Mae Roberson, is the owner of record of the following described property located in White County, Arkansas, to-wit:

The West 165 feet of the East 450 feet of the North 150 feet of Block 7 of Watkins and Quarles Addition to the City of Searcy, Arkansas.

4. That defendant, Verna Odean Roberson, is the owner of record of the following described property located in White County, Arkansas, to-wit:

The East 186 feet of the West 376 feet of the North 182 feet of Block 7 of Watkins and Quarles Addition to the City of Searcy, Arkansas.

5. That plaintiff is in the process of widening the present

East Race Avenue where it abuts the North side of defendants' property; that the said widening of said street will cause plaintiff to utilize the full 50 foot right-of-way.

6. That defendants have refused to allow plaintiffs to proceed with the widening of said street.

WHEREFORE, plaintiff prays that this Court enter an Order restraining defendants from in any way interfering with plaintiff's use and development of its 50 foot right-of-way of East Race Avenue where said street abuts the North side of defendants' property, and for all other proper relief."

The Robersons filed an answer admitting paragraphs 1, 3 and 4 of the complaint and denying paragraphs 2, 5 and 6 and all other allegations in the complaint. The Robersons filed a counterclaim designated "cross-complaint" as follows:

"1. Cross-complainant, Ora Mae Roberson is the owner and in possession of the following lands located in White County, Arkansas, to-wit:

All property between the North line of the property set forth in paragraph 3 of the Complaint and the present South curb of East Race Street.

2. Counter-complainant, Verna Odean Roberson, is the owner and in possession of the following lands in White County, Arkansas, to-wit:

All property located between the North line of the property set forth in paragraph 4 of the Complaint and the present South curb of East Race Street.

3. Counter-complainants and those under whom they claim title have possessed said property openly, notoriously, adversely, peacefully, exclusively, hostilely, and continuously and have paid duly assessed taxes thereon for a period of eighty-two (82) years.

WHEREFORE, counter-complainants pray that the

claims and purported interests of said counter-defendant in and to said lands be canceled and removed as clouds upon counter-complainants, that the title to said lands be quieted and confirmed in counter-complainants, for costs, and for any and all relief to which they may be entitled."

By amendment to their answer the Robersons alleged in part as follows:

"2. The Act of the State Municipal Board of September 29, 1891, in ordering that the Town of Searcy be advanced to a city of the second class, was void *ab initio* for the reason that there were less than 2,500 inhabitants within the town limits of the Town of Searcy as of that date and as of the date of September 25, 1891, the date of the special census."

They then alleged that the special census taken in 1891 by which Searcy was declared a city of the second class was fraudulently obtained and reported and the Robersons prayed as follows:

". . . [T]hat the order of the State Municipal Board dated September 19, 1891, be declared null and void; that plaintiff's Complaint be dismissed; for their costs; and for all other proper relief."

Following a jury trial the trial court entered judgment, the pertinent part of which is as follows:

"After having heard all the evidence adduced, the instructions of the Court and argument of counsel, the jury retired to consider its verdict, and, after deliberating thereon, returned in due course the following verdict:

'We, the jury, find for the defendants, Ora Mae Roberson, Verna Odean Roberson, and Bruce Roberson. * * *

IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT that plaintiff's complaint filed herein be dismissed with prejudice."

On appeal to this court the City of Searcy has designated 17 points on which it relies for reversal. The appellant has discussed these points rather briefly and we shall do likewise. It is necessary, however, to relate some of the background and procedure followed in this case in order to understand the significance of the points relied on.

The city, of course, had the burden of proving the allegations of its complaint, including the location of its 50 foot right-of-way in relation to the presently open and improved Race Street, and in relation to the appellees' property. Mr. Moody Jones, a land surveyor, testified as an expert for the city. After extended examination, he concluded that Race Street as constructed was 28 feet wide from curb to curb, and the south line of the 50 foot right-of-way as platted would be about 11 feet south of the south curbline of Race Street. Mr. Max Mehlburger, a civil engineer called by the appelles, testified that on the west end of Race Street the center of the street, as presently laid out, is 7.23 feet south of the true center line of the 50 foot right-of-way as platted, and that on the east end the difference is 7.66 feet.

The appellees had the burden of proving their claims of adverse possession against a municipality long immune to such defense in possessory actions.

Prior to the enactment of Act 24 of June 5, 1897, Ark. Stat. Ann. § 19-2305 (3d) (Repl. 1968), cities of the second class were subject to the statute of limitations on recovering property in adverse possession the same as incorporated towns were until the enactment of Act 426 of May 28, 1907, Ark. Stat. Ann. § 19-3831 (Repl. 1968). Act 24 of 1897 barred the running of the adverse possession statute as of the effective date of the Act. *Mebane* v. *City of Wynne*, 127 Ark. 364, 192 S.W. 221, (1917). Consequently, it was incumbent upon the appellees, in order to sustain their burden of proving their claim of adverse possession, to prove not only the usual elements of adverse possession, but it was necessary to prove that they and their predecessors in title held adversely to the City of Searcy for the statutory period of seven years *prior to June 5, 1897,* when Searcy, as a second class city became immune to the statute by Act 24; or, in the alternative, it was

necessary for them to prove that Searcy did not become a second class city and subject to Act 24 until after the seven year statute had run against Searcy as an incorporated town.

In September, 1891, the Town of Searcy was declared raised to a city of the second class under a special census taken between the taking of federal census as provided in Ark. Stat. Ann. § 19-206 et seq. (Repl. 1968). The appellees attacked the second class classification as fraudulent and void *ab initio* by offering testimony that many of the alleged citizens of Searcy appearing in the special census of 1891 did not actually live inside the city limits; and, that Searcy did not become a city of the second class containing the necessary 2,500 population until sometime after 1910[1] when the population, according to the federal census, amounted to 2,331. Thus, the appellees based their claim of adverse possession as spanning a period of seven years prior to, at least, 1910. In support of their claim of adverse possession they offered testimony to the effect that a fence had been up along the south side of Race Street from 1894 until about 1949.

Tom Holston testified that he was born in 1889 and prior to leaving Searcy to live in Little Rock in 1904, he played with other boys in the vicinity of Race Street. He said there was a little pasture "back there" south of Race Street. He said there was a fence between the pasture and Race Street and that livestock was inside the pasture. He said that Race Street was then a regular dirt road but he did not know how wide it was. He said there was a ditch on each side of Race Street, and that there was a drainage ditch between Race Street and the fence on the south side, and there was a path walk between the drainage ditch and the fence. He said he did not remember anything in particular about the fence except that it was an old one not in too good condition. He said that Race Street was paved and curbs put in somewhere around 1911, if he is not mistaken. On cross-examination this witness said he was around nine years of age when he first remembers the fence along Race Street. He said the drainage ditch on the south side of Race Street was probably four or five feet wide as he remembers it, and that the path between the ditch and the fence would have been three or four feet wide.

---

[1]The 1920 population as shown by federal census amounted to 2,836.

Claude Parker testified that he was 81 years of age; that he moved to Searcy on August 1, 1911, and had been familiar with Race Street since about 1912. He said that in 1912 Race Street was a dirt road but he does not know how wide it was. He said there were ditches on the sides of the road and in 1912 there was just a field where the Roberson property now is and there was a fence between the road and the field. He was asked to describe the fence and answered as follows:

"A. Well it was just a wire fence. Wasn't no good fence but it was patched up barbed wire, chicken wire and every kind of wire.

Q. What did it look like the first time you can recall seeing it?

A. That's what it looked like."

Mr. Parker said that strawberries and potatoes were raised inside the fence and that a pasture was built "on the far end." He said he believes it was about 1928 when curbs were installed on Race Street. He said the south curb was placed one and one-half feet from the fence.

Joe Knox next testified that he was born in Searcy and was 81 years of age. He said that when he was a small boy his father was in the transfer business and rented "Jack Roberson's property" for a pasture. He said at that time, Race Street was just a dirt road. He said there was a ditch along the south edge of the dirt road and then a fence. He then testified as follows:

"Q. Is your memory of the width of east Race Street back in those days good enough to give a reasonably accurate estimate of the width of that road?

A. Oh, I would say around forty feet.

Q. What all are you including in that width, Mr. Joe?

A. Well I am including the ditches, had a ditch on each side. From those ditches it would be about forty feet wide.

Q. How much space was there between the ditch, bottom of the ditch and — on the south side of the street to this fence?

A. I'd say two feet.

Q. What, if you remember, was that fence like when you were going down there as a boy putting mules and horses in that pasture?

A. Well, it was just woven wire and barbed wire. Bailing wire, patched most any kind of way.

Q. How would you describe that fence at that time, back there when you were a boy in so far as being a new or old fence?

A. Well, I would say it was kind of old."

He said that he would not say whether the fence was there in 1920, but he knows it was there in 1910. He said he does not remember the fence being there after the street was paved. He said he does not remember when the fence was taken down.

John Wesley Roberson testified that he was born in 1893; that he is the father of Jack Roberson and first came to Searcy in 1921. He said that in 1921 Race Street was just like any country road, and that south of Race Street, where his son's property now joins the street, there was a pasture or something like that, he does not remember what was growing on it but it was enclosed. He then testified as follows:

"Q. How was it enclosed?

A. Wire fence of some nature. That fence was so old that it had just been patched from time to time — patched with bailing wire and all kinds of wire. Some of the older wire you could just break with your hands.

Q. How far from the ditch there was it to this fence? I am talking about the road ditch.

A. Oh, I would imagine that it was from six to four feet, maybe."

He then testified that he assisted in taking the fence down in 1942 or 1943 and that in his judgment the curbing was about 18 inches from the fence.

One of the appellees, Jack Roberson (apparently one and the same as "Bruce"), testified that he was born in Searcy in 1921 and remembers the fence along the south side of Race Street between Race Street and the property he now owns. He testified at length as to his activities before and after he purchased the property and then testified as follows:

"Q. Did you advise the city council or any other city official that you were claiming all the way to the paved portion of Race Street? Out here where the subject property is located?

A. The question never arose before.

Q. You didn't bring it up did you?

A. No, sir.

Q. Did you advise them at any other time?—that you were so claiming the property?

A. Yes, sir.

Q. When was that?

A. The date, I do not remember.

Q. What—

A. It was when the highway department started staking out the area."

The above constitutes the entire evidence as to adverse possession.

Landers Nance testified that he was born on July 15,

1879, and is 73 years of age or older. He was then questioned as to the names appearing as residents of Searcy in the special census of 1891. He identified many of the names as individuals residing outside the corporate limits of Searcy when he was 11 or 12 years of age. Angie Mae Dillinger 91 years of age also testified as to who did and did not live in Searcy in 1891.

We return now to the points relied on. The appellant first contends the trial court erred in permitting the appellees to attack the validity of the proceedings elevating Searcy to a second class city. The appellant sets out several sub-points to this contention, but we are of the opinion we answered all of them adversely to the appellant's contention in *McClellan* v. *Stucky*, 196 Ark. 816, 120 S.W. 2d 155 (1938). See also *Waldrop* v. *K.C. So. Ry. Co.*, 131 Ark. 453, 199 S.W. 369, (1917).

The appellant's next two contentions are that the trial court erred in refusing to dismiss appellees' allegations of fraud and in permitting the introduction of federal census. We find no merit in either of these contentions. Under the appellant's next three assignments it contends that the trial court erred in refusing the appellant's instructions 19, 21 and 23. Proffered instruction 19 simply defined "estoppel." Proffered instruction 21 recited the text of Act 167 of 1909 declaring legal and binding previous actions of town councils raising the municipal classification notwithstanding irregularities, defects, errors or informalities in such proceedings, and proffered instruction 23 had to do with the five year statute of limitations in bringing action. These instructions are not fully abstracted but we find no merit to appellant's contentions because there was simply no power or authority whereby a municipality could be raised to a city of the second class if it did not have the requisite number of inhabitants; and, any effort to raise a town to a city of the second class without the requisite number of inhabitants is void *ab initio*. New life cannot be breathed into a body politic that never existed in the first place.

The appellant's remaining assignments, with our own brief comment on each one, are as follows:

"VII. The court erred in denying appellant's motion to strike all testimony on the issue of adverse possession."

In arguing this point the appellant refers to its memorandum brief filed with the trial court and cites cases defining proof necessary to establish adverse possession.

"VIII. The court erred in denying appellant's motion to strike all testimony on the issue of estoppel."

The appellant's total argument on this point appears as follows:

"At the conclusion of Appellees' case Appellant renewed its Motion to Strike the testimony going to the issue of estoppel, and referred the Court to the Arguments contained in the Memorandum Briefs previously submitted. (Tr. 280) The arguments set forth in the brief are enumerated above. (Argument I-C) Objection was also made to the Court's refusal to give requested Instruction No. 19 defining estoppel. (Tr. 286, 304)."

The remaining nine points appear as follows:

"IX. The court erred in giving instruction No. 6, as modified.

X. The court erred in giving instruction No. 7, as modified.

XI. The court erred in giving instruction No. 9, as modified.

XII. The court erred in giving instruction No. 11, as modified.

XIII. The court erred in giving instruction No. 12 as modified.

XIV. The court abused its discretion in providing a general form of verdict to the jury.

XV. The court erred in refusing to exclude testimony of witness, Mehlburger.

XVI. The court erred in permitting hypothetical questions.

XVII. The court erred in overruling appellant's motion to strike Mehlburger's testimony regarding interpretation of Jones' plat."

The appellant has failed to fully abstract the instructions it complains of; however, the instructions which were *refused* by the trial court are identified by number and set out in the record as has already been indicated, but the instructions *given* by the court are not so identified by number. As an example, as to instruction No. 6 challenged by the appellant, the record is as follows:

"THE COURT: Instruction No. 6 will be given as modified.

MR. TEDDER: The plaintiff objects to the giving of Instruction No. 6 as modified generally and specifically for the same reasons as the objections that were made to the giving of Instruction No. 5 in that it does not include any other allegations upon which the City relies with respect to defendants counter-claim as to adverse possession or fraud."

The instructions, as given by the court, were actually given to the jury in the usual continuous narrative form. They appear in the record as continuous narrative instructions separated into paragraphs, but nowhere in the record are the separate instructions which was given identified by number. In the appellant's contention that the court erred in giving instruction No. 6, as modified, his entire argument under this point is as follows:

"Instruction No. 6 purports to inform the jury that Appellant's sole claim was that the disputed strip of land was a part of the 50 feet right-of-way shown on the Watkins and Quarles Addition plat. The instruction as

given omits the contentions of appellant with regard to defenses of Statute of Limitations, the curative statute, and estoppel of Appellee.

It is inherently wrong to give an instruction which ignores a material issue in the case and allows the jury to find a verdict without considering the omitted issue, and such error cannot be cured by correct instructions separately given. *Miller* v. *Ballentine*, 242 Ark. 34, 411 S.W. 2d 655, (1967)."

We find no merit in assignments IX through XIII. Neither do we find merit in assignments XV through XVII.

Some suggestion has been made that perhaps the trial court should have submitted the issues to the jury on special interrogatories instead of the verdict forms used. We have consistently held that the submission of special interrogatories to the jury is within the discretion of the trial court, *St. Louis & S.F. Ry. Co.* v. *Jones*, 59 Ark. 105, 26 S.W. 595 (1894) and *St. Louis Southwestern Ry. Co.* v. *Jackson*, 242 Ark. 858, 416 S.W. 2d 273 (1967). On the record as abstracted, we cannot say that the court abused its discretion in this instance.

Affirmed.

HARRIS, C.J. and JONES, J., dissent.

FOGLEMAN, J., concurs.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case. The *city* is the one who owns title to the property in dispute, and the appellees are the ones who contend the city lost title through adverse possession more than seventy years ago. It is quite true that the appellant does not argue the lack of substantial evidence to sustain adverse possession in its brief, but it does argue that the trial court erred in giving instruction No. 12 and in not striking testimony as to adverse possession. The record in this regard appears as follows:

"MR. TEDDER: Based on the Memorandum Briefs submitted by the plaintiff, the plaintiff moves the Court to strike all the testimony dealing with the issue of adverse possession for the reason that there is no substantial evidence in the record to support the defendants allegations. He testifies specifically as to the property which he is claiming and for the further reason that the testimony reflects that the possession has been permissive and that the testimony does not support the adverse possession in any other respect.

\* \* \*

MR. TEDDER: The plaintiff objects to the Courts giving of Instruction 12 generally and specifically for the reason that there is no evidence in the record as to when the defendant's adverse possession title was perfected. The plaintiff objects to the Court's refusal to give Instruction No. 12-A.

THE COURT: Instruction No. 13 will be given.

MR. TEDDER: The plaintiff objects to the giving of Instruction No. 13 generally and specifically for the reason that there has been no evidence introduced into the trial as to when the defendants so-called adverse possession title was perfected and the exact boundaries that they obtained by such possession and for the further reason that the testimony of Mr. Parker, who was called as a witness for the defendant, indicated that there was some break in the possession and the erection of the fence over a five year period between 1910 and 1915.

THE COURT: Instruction No. 15 defining adverse possession will be given."

The majority has correctly set out the entire evidence pertaining to adverse possession and it comes nowhere near making a case for the jury in this case.

It was stipulated, and the jury was so advised, that the persons who platted Watkins and Quarles Addition to Searcy

were the actual owners of such land at the time when the plat was filed for record in 1870. There is no evidence whatever that the original owners parted with title to this land between the date they platted it in 1870 until after the crucial period of the alleged seven years adverse possession between 1894 and 1910. The only evidence that there was even a fence along the south edge of Race Street in 1884 describes it as an old fence and there is no evidence whatever as to who owned the fence, or who claimed title or possession of the land in the vicinity, or that the original owners who platted the land had parted with possession of any part of it in 1894 or prior thereto.

In so far as the record in the case at bar discloses, this case is very similar in time and nature to the case of *Little Rock* v. *Wright*, 58 Ark. 142, 23 S.W. 876 (1893). In that case Mr. Wright on February 5, 1870, executed a plat and bill of assurance to land he owned and called "Weldon E. Wright's Addition to the City of Little Rock." The streets as shown in the plat were dedicated to public use under a Legislative Act in 1873 and the Addition became a part of the City of Little Rock. Mr. Wright continued to live on some of the land until his death, after which his heirs continued to live oh and use the land until in 1889 when the City of Little Rock attempted to open Gaines Street, a part of which had remained in possession of the Wrights. The Wright heirs who were in possession sought an injunction to prevent the opening of the street and claimed title because they had held possession of the property under claim of title for the statutory period. The chancery court granted the injunction and in reversing the chancellor's decree, this court said:

> "No possession consistent with the right of the true owner can be adverse to him. In this case the land was dedicated to public use for streets, but it remained enclosed and obstructed after the dedication. The city had the right to postpone the removal of the obstructions, and the opening of the streets, until such time as its resources permitted, and the public necessities demanded. As the city only acquired the right to use the land as streets, and Weldon E. reserved all other rights, he had the authority to use the land for pasturage, or the growth of crops, or for any other purpose consistent with the right of the city, until the authorities of the city, in

the lawful exercise of its power, determined to open the streets."

In the case at bar there is no evidence who owned the property during the alleged period of limitations.

The trial court was correct in the instruction given defining adverse possession but the trial court was not correct in giving it. In other words, the trial court was correct in the instruction given, but the trial court erred in giving it. The court's instruction was as follows:

"If you find that from a preponderance of the evidence, Searcy legally became a city of the second class on the first Tuesday of April, 1892, then for the defendant to establish title to the disputed strip by adverse possession they must prove by a preponderance of the evidence that for a period of more than seven (7) years prior to June 5, 1897, their predecessors in title had actual, notorious, hostile, continuous, adverse and exclusive possession of the disputed tracts with the intent to hold same adversely to the City of Searcy."

I am unable to find in the record in this case one shred of evidence to sustain either of the propositions the trial court told the jury was necessary in this case, and it is my opinion that the trial court erred in giving the instruction and in submitting the issues of adverse possession to the jury.

I would reverse this case and remand it to the trial court for a new trial for the purpose of resolving the differences between the two engineers as to the exact location and boundaries of the 50 foot right-of-way platted and dedicated to the public as Race Street.

JOHN A. FOGLEMAN, Justice, concurring. Although I have very serious reservations about the properiety of the submission of this complex litigation with its many issues, on some of which appellant bore the burden of proof and on some of which appellees had that burden, I must reluctantly concur. This is a matter in which the circuit judge has a very wide latitude of discretion. This is conceded by appellant,

who also points out that this court will not reverse the trial judge for failure to submit interrogatories unless there has been an abuse of discretion. This, of course, means that the discretion involved is a sound judicial discretion. But we have recognized that trial attorneys have a responsibility in the matter. See *Rudolph v. Mundy*, 226 Ark. 95, 288 S.W. 2d 602. Appellant also had the burden of demonstrating error here. I simply cannot say the circuit judge erroneously exercised his discretion when I am unable to find anywhere in any abstract or brief, the interrogatories requested by appellant or anything more than the statement that they requested the court to submit these issues on interrogatories. This is not enough.

I cannot join in my brother Jones's dissent because I do not find the instructions abstracted, so I must concur on that point also.