EICHENLAUB, *Appellant*, v. THE CITY OF ST. JOSEPH *et al.*

Division One, January 23, 1893.

1. **Municipality**: ORDINANCE: MAYOR: RESOLUTION. Where a city charter provides that an ordinance before it can become a law shall be presented to the mayor for his approval, a resolution not presented to him cannot have the force of an ordinance.

2. ———: ———: ———: ———: REMOVAL OF WOODEN BUILDINGS. Where such city charter requires the limits within which wooden buildings may be erected, and also the wooden buildings to be regulated by ordinance, and the mayor and council have in due form enacted an ordinance prohibiting the erection of such buildings within a defined district, the council cannot modify or suspend the ordinance by resolution not approved by the mayor.

3. ———: ———: ———. Where a municipal corporation has the power to prohibit the construction of wooden buildings in a district defined by ordinance, and has passed an ordinance to that effect, it may remove a building erected in violation of such ordinance and that too without any judicial proceeding whatever.

4. ———: ———: ———: CONSTITUTION. Such power on the part of the corporation is a police one delegated to it for the public good, and does not infringe the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law."

5. ———: ———: ———: ———. The agents of the corporation, removing without judicial investigation, wooden buildings under the ordinance, must, to exonerate themselves from liability, show *first* that the building was erected or permitted to remain in violation of law, and *second* that in tearing down the same, reasonable care was taken to preserve the materials.

6. **Evidence**: CITY ORDINANCE: STATUTE. A document purporting to be a city ordinance approved by the mayor, attested by the register and under the seal of the city is admissible in evidence under Revised Statutes, 1879, sec. 4648, which provides that "all ordinances of the city may be proved by the seal of the corporation."

7. **City Ordinance**: WOODEN BUILDINGS, ORDER FOR REMOVAL OF. Where a city ordinance relating to the removal of wooden buildings, illegally erected within the fire limits, provides that in case of the refusal of an owner to remove it within a specified time, "the mayor shall cause said building to be removed," a verbal direction or written instruction to the chief of the fire department to enforce the ordinance is a sufficient order of removal to that official.

*Appeal from Buchanan Circuit Court.*—HON. O. M. SPENCER, Judge.

AFFIRMED.

*C. A. Mosman* and *B. R. Vineyard* for appellant.

(1) The city charter clothed it with power "to regulate, restrain or prohibit" the erection of wooden buildings. The power *to regulate* authorized the city to license. *Kinsley v. Chicago*, 124 Ill. 356; *St. Johnsbury v. Thompson*, 59 Vt. 300; *Welch v. Hotchkiss*, 39 Conn. 104. (2) The power of the city to regulate being conceded, it is no defense for it to show a want of compliance on its part with the formalities required by the charter authorizing it to act. *Deming v. Houlton*, 64 Me. 254; *Grandchute v. Winegar*, 15. Wall. 355; *East Lincoln v. Davenport*, 94 U. S. 101; *Stiens v. County*, 48 Mo. 186; *Hidecooper v. County*, 3 Dillon, 175. (3) Defendant Hartwig had no authority either as an individual citizen or as mayor to decide that the license issued to plaintiff was a nullity. Presumptively it was valid and binding on him until set aside by the court. *Knight v. City*, 70 Mo. 237. (4) Having granted Eichenlaub permission to erect his house, and, he having on the faith of that permission,

entered into a contract, the city cannot be heard to contend that the license was void, because it did not assume a particular form. *Amy v. Alleghany*, 24 How. 373; *Rodgers v. Burlington*, 3 Wall. 667: *Zabriskie v. Railroad*, 23 How. 400; *Union Depot v. St. Louis*, 76 Mo. 393; *County v. American Co.*, 93 U. S. 129. (5) The police power does not authorize the arbitrary destruction of wooden buildings in fire limits without a hearing in court. Any law authorizing such destruction seeks to legalize the taking of private property without due process of law, and is unconstitutional. *Lowry v. Rainwater*, 70 Mo. 152; *Rendering Co. v. Behr*, 77 Mo. 91. (6) The defendant city is liable for wrong done by its authority, within the general scope of its powers. *Dooley v. City of Kansas*, 82 Mo. 444; *Hunt v. City of Boonville*, 65 Mo. 620. (7) All participating in, or encouraging, or assenting to, the wrong are liable. *Murphy v. Wilson*, 44 Mo. 313; *Allred v. Bray*, 41 Mo. 484; *McManus v. Lee*, 43 Mo. 206. (8) And the principal is responsible together with the agent for a misfeasance done by the agent within the line of his agency. *Martin v. Benoist*, 20 Mo. App. 262; *Harriman v. Stowe*, 57 Mo. 93; *Buis v. Cook*, 60 Mo. 391; *Perrine v. Claflin*, 11 Mo. 13; *Dowell v. Taylor*, 2 Mo. App. 329.

*Huston & Parrish* for respondents.

(1) The record offered in evidence was properly refused. *First.* Because the right of the city to remove the building was admitted, and not in issue, and the paper offered did not tend to prove the manner in which said building was removed. *Second.* Because the paper offered was the unauthorized act of the council and was not an ordinance. Revised Statutes, 1889, sub-div. 10, sec. 1255, p. 363; and sec. 1245, p. 362. (2) The

common council, having passed an ordinance fixing fire limits and prescribed a penalty for its violation by the erection of buildings therein contrary to its provisions, could do no more than amend or appeal it by ordinance duly passed. The council could not authorize, by resolution or otherwise, the plaintiff to violate the ordinance. That which the law requires shall be done by ordinance by the mayor and common council, cannot be delegated to another authority. *Shean v. Gleason*, 46 Mo. 100; *Cape Girardeau v. Fugue*, 30 Mo. App. 551. (3) If the paper offered had been an ordinance duly passed by the council and approved by the mayor, it would have been invalid. *First*. They could not have authorized the plaintiff to violate the laws and ordinances of the city, by ordinance. *Second*. Because the ordinance would have been class legislation of the most vicious character. It would have authorized the appellant to do that which no other person could have done, and would have subjected the people of the city to the dangers intended to be prevented by the passage of the ordinance fixing the fire limits. *Hannibal v. Telephone Co.*, 31 Mo. App. 23; Cooley's Constitutional Limitations, 393; *Bank v. Cooper*, 2 Yerg. 599; *Jones v. Perry*, 10 Yerg. 59.

*J. W. Boyd, M. A. Reed* and *James Limbird* also for respondents.

(1) The court erred in overruling the objection to introduction of evidence as to Westheimer and McNutt, and refusing to give instruction directing the jury under pleadings and evidence to find for them, as action was clearly barred by statute of limitations. See Revised Statutes, 1889, sec. 6776, p. 1591. (2) The verdict, being for the right party and supported by the pleadings and evidence, will not be disturbed by this court. 98 Mo. 242; 96 Mo. 285; 94 Mo. 574.

BLACK, P. J.—This is a suit to recover damages for tearing down a partly constructed frame house belonging to the plaintiff, which was situated within the fire limits of the defendant city, as those limits had been defined by ordinance before any part of the building had been constructed. The defendants, other than the city, are Hartwig, Westheimer and McNutt, who were respectively the mayor, acting mayor and chief of the fire department.

The defendants justify under the charter and ordinances. The second section of the act of February 8, 1865, amending the character of the city of St. Joseph (Acts 1865, p. 434) provides: "The mayor and city council shall have power, by ordinance, to levy and collect the following taxes, viz.: *First*. To license, tax and regulate" numerous occupations and objects, all of which are named. "*Tenth*. * * * to regulate restrain or prohibit the erection of wooden buildings within such limits as may be prescribed by ordinance, and to provide for the removal of the same at the expense of the owners thereof when erected and suffered to remain contrary to the ordinances of the city."

The defendants set up and put in evidence two ordinances defining the fire limits, and a third which provides:

"Sec. 2. No building shall be erected within the fire limits * * * unless the same shall be constructed in conformity with the following provision: All outside and party walls shall be made of stone, brick or other fire proof materials; said walls shall not be less than eight inches in thickness."

"Sec. 6. Whenever any wooden building shall be erected, enlarged or removed, or in process of erection, enlargement or removal, contrary to the provisions of

this chapter, upon information it shall be the duty of the mayor to issue an order to the owner, occupant, person in charge or builder thereof, to have such building taken down or removed to some place outside the fire limits, forthwith; and upon refusal or neglect of such person to comply with the requirements of such order within forty-eight hours after having received the same, the mayor shall cause said building to be removed and the expense thereof may be recovered of the owner of such building by suit.''

The other evidence discloses the following facts: A sewer ran across the plaintiff's lot upon which he first put up the walls of a brick house. These walls fell during a heavy rainfall; and, at a meeting of the city council held on the seventeenth of September, 1884, the defendants Hartwig and Westheimer being present, he presented a petition asking permission to erect a frame building; and ''on motion the petition was received and referred to the board of fire engineers and the two members of the council from the third ward, with power to give the permission asked for.'' This board or committee and the two aldermen signed and gave to the plaintiff written permission to build a frame house, the roof to be covered with tin and the sides and ends with sheet iron. Defendant Westheimer was one of the persons who signed this permit. Armed with this permit the plaintiff made a contract for the construction of the house and proceeded with the work.

Mayor Hartwig signed and caused to be served on the plaintiff and his contractor a written notice, dated the second of October, 1884, stating that the building was within the fire limits, that it did not conform to the ordinance, and directing them to stop work on the building and ''to tear down all parts of said building already erected,'' within forty-eight hours. Plaintiff testified that the notice was served on him, that he

could not give the date of the service, but he thought it was at least two days before the house was taken down.    On the twenty-first of October, 1884, the defendant Westheimer as acting mayor, signed and addressed to defendant McNutt, as chief of the fire department, this letter or order:    "It is the wish of the mayor, his honor, H. R. W. Hartwig, that you notify Mr. Frank Richenlaub to remove the wooden structure partly erected on lot 8, Logan's Addition, within the time allowed by ordinance;" which being shown to the city counselor, he indorsed thereon and signed the following instruction:    "You must obey the mayor's instructions and enforce the ordinances." McNutt testified that he employed carpenters and tore the house down; he says:    "I acted in accordance with the papers you have in your hand," referring to the notice and order as we understand.    There is evidence tending to show that the carpenters were careless and destroyed much lumber in removing the building; and on the other hand there is evidence that the work was done with due care.    At this time the studding was up for two stories, and the north side was boarded and covered with sheet iron.    The floors had not been laid, and the house was not yet under roof.

The court directed a verdict for the defendants Hartwig and Westheimer and as to the other defendants submitted to the jury the question whether McNutt used such care as to cause no more injury to the materials than was necessary, and this issue the jury found for defendants.

The first contention on the part of the plaintiff is, that the charter power to regulate, restrain or prohibit the erection of wooden buildings carries with it the power to license the erection of such structures; that the charter being silent as to the form of the license,

the resolution of the council and the permit issued pursuant thereto by the committee amount to a license to construct the frame house.

Where a charter commits the decision of a matter to the council, and is silent as to the mode of expressing the decision, it may be evidenced by resolution and need not be in the form of an ordinance. This proposition is well settled by the authorities cited by the plaintiff. But it is just as well settled that when the mayor is part of the lawmaking power, his concurrence in legislative action is essential to its validity. If the charter provides that the power given must be exercised by ordinance, and it requires the concurrence of the mayor to pass an ordinance, action by a simple resolution of the council is invalid.. *Saxton v. Beach,* 50 Mo. 488; *Saxton v. St. Joseph,* 60 Mo. 158; *Thompson v. Boonville,* 61 Mo. 283; *Irvin v. Devors,* 65 Mo. 627; *Trenton v. Coyle,* 107 Mo. 194.

By the charter provision before quoted the limits in which wooden buildings may be regulated, restrained or prohibited must be defined by ordinance. As to this there can be no question. We think it equally clear that the restraint, regulation or prohibition must also be by virtue of an ordinance. The words "by ordinance" in the first clause apply to and qualify the tenth clause as well as the preceding nine clauses. Indeed the tenth clause makes this clear, for it says the mayor and council shall have power to provide for the removal of wooden buildings when "erected and suffered to remain contrary to the ordinances of the city." The regulation, restraint or prohibition, whatever it may be, must be evidenced by an ordinance, and a simple resolution of the council is not sufficient. The charter is clear to the effect that *every* ordinance before it can become a law must be presented to the mayor for his approval. This resolution was not pre-

sented to the mayor, and is not an ordinance. The mayor and council had in due form enacted the ordinance prohibiting the erection of wooden buildings within the defined district, and the council had no power to repeal, modify or suspend its operation otherwise than by ordinance. The resolution and permit given thereunder did not have the effect to suspend the operation of the ordinance. That ordinance remained in full force and the permit amounted to nothing. It could not and did not give the plaintiff any right to erect the frame house.

It is doubtless true that, under this charter, the city of St. Joseph could regulate, instead of prohibiting, the erection of wooden buildings, even in the fire limits. It could fix and determine the regulations by general ordinance, and make it the duty of every person to obtain a permit or license before erecting a building. With such general ordinance prescribing the regulations, a special ordinance in case of each permit would not be necessary. The power to examine the plans of a proposed structure and to issue the permit could be delegated to some officer, or the permit could be issued by resolution of the council. But all this does not aid the plaintiff in this case; for the mayor and council had enacted no such general ordinance. The ordinance and the only ordinance in force was the one which required all outside and party walls to be of stone, brick or other fire proof materials. The resolution and permit issued by the committee, to which the plaintiff's petition was referred, undertake to suspend the operation of the ordinance in this particular case, and this the council could not do. It could only be done by the power that enacted the ordinance, that is to say, by the concurrent act of the mayor and council by an ordinance. The court committed no error in excluding the petition which the plaintiff presented to

the council, the resolution referring the same to the committee and the so-called permit issued by that committee.

2. It is next insisted that the ordinance directing the removal of the building is void because it attempts to justify the destruction of private property without judicial inquiry, and therefore violates that provision of the constitution which declares "that no person shall be deprived of life, liberty or property without due process of law." And in support of this we are cited to *Lowry v. Rainwater*, 70 Mo. 152, and *Rendering Company v. Behr*, 77 Mo. 91.

In the first of these cases the defendants, acting pursuant to statutory law, seized and publicly destroyed a table used as a gambling table without judicial investigation or condemnation. The law was held unconstitutional. It was not the gambling table which constituted the offense, but it was the use to which it was put. Here it is the house itself which violates the law. In the other case a city ordinance was held unconstitutional which undertook to confer upon one person the right to remove and convert to his own use the carcasses of dead animals not slain for food. It was held that the ordinance could not be upheld as a police regulation, and this for the reason that it was not necessary to take property from one and give it to another, until the property was in such a condition that it or the use of it was likely to become a nuisance. Here the ordinance does not undertake to deprive the plaintiff of his property. The bare statement of these cases is enough to show that they are entirely unlike the one in hand.

Many of the powers exercised by municipal corporations are police powers, delegated to the corporations for the public good; and it is well settled law that every citizen holds his property subject to the exercise

of such powers.   Such laws and regulations may and
often do disturb the enjoyment of the property of the
citizen, but such laws having that effect do not amount
to the taking of private property for public use.   They
simply regulate the use.   1 Dillon on Municipal Cor-
porations [3 Ed.] sec. 141.   "All the property and
vested rights of individuals are subject to such regula-
tions of police as the legislature may establish with a
view to protect the community and its several members
against such use or employment thereof as would be
injurious to society or unjust toward other individ-
uals."   2 Story on the Constitution [5 Ed.] sec. 1954.
See also *Bluedorn v. Railroad*, 108 Mo. 439.

The power of a city to take all reasonable measures
to prevent fires and their spread is of the greatest
importance, for on its proper exercise depends the lives
and property of the citizens; and it is accordingly held
by a majority of the courts in this country that munici-
pal corporations have the inherit power to prescribe
fire limits and to regulate or prevent the erection of
wooden buildings within such limits, though in a few
states it is held such power exists only where it is con-
ferred by express grant.   The cases on this subject are
collected in 15 American & English Encyclopedia of
Law, 1170.   It is unnecessary here to express any
opinion on this question; for in this case the city has
the express power to create such limits and to regulate
or prohibit the erection of wooden buildings therein,
and to provide for the removal of such buildings when
erected or allowed to remain contrary to ordinance.

The real question here is whether the city had the
right to tear down the building without any judicial
proceeding against the plaintiff, the owner thereof.
We find no real conflict in the authorities upon this
question; for it is held in many cases that where a
municipal corporation has the power to prohibit the

construction of wooden buildings in a district defined by ordinance, and has enacted an ordinance to that effect, it may remove any building erected in violation of the ordinance, and this too without any judicial proceeding whatever. *McKibbin v. Fort Smith*, 35 Ark. 352; *Klingler v. Bickel*, 117 Pa. St. 326; *King v. Davenport*, 98 Ill. 305; *Baumgartner v. Hasty*, 100 Ind. 575; *Hine v. New Haven*, 40 Conn. 478. As said in the case last cited: "Police powers of this character are of a high order, and when a case arises should be speedily exercised. Delays incident to the ordinary processes of law would seriously impair their efficiency and could not be tolerated."

The right to tear down or remove the prohibited building is analogous to the right which every individual has to abate a nuisance, the limits to which right of the individual we need not stop to consider. The cases cited also show that tearing down such prohibited buildings without judicial proceedings, erected in defiance of law, is not a forfeiture of private property; for as has been said it is but the exercise of a police power, and not the declaration of a forfeiture. Persons, however, executing the provisions of such ordinances, without judicial investigation, must be prepared to establish these facts: *First*. That the house was erected or permitted to remain in violation of law; and *second*, that in tearing down the building reasonable care was taken to preserve the materials. We may add that such ordinance must be reasonable, but there is nothing in this case to show or tending to show that this ordinance was or is unreasonable.

There is no doubt but the plaintiff began the construction of this frame house and expended some $500 at least, relying upon the permit; and the case is a hard one. But it must be remembered this ordinance was enacted in the interest of the public good, and

neither the council nor the committee had any right or power to license any one to violate the law. The fact that these officials did issue the permit in violation of the law did not estop the city or its officers from enforcing the ordinance. No case cited has any tendency to support the proposition that the officials were by the unauthorized act estopped from executing the ordinance prohibiting the erection of wooden buildings in this fire district.

3. To the ordinance fixing the fire limits, put in evidence by defendants, the plaintiff objected on the ground that there was no evidence tending to show that it had been passed by the council, which objection was overruled. The records of the council were not offered in evidence, but the document professes on its face to be the original ordinance. It was approved by the mayor and attested by the register, and is under the seal of the city. Section 4648, Revised Statutes, 1879, provides: "All ordinances of the city may be proved by the seal of the corporation." We cite this section of the general law because we understand the city of St. Joseph had come under the general law before the date of the trial of this case in the circuit court. The ordinance having the seal of the city attached was properly admitted in evidence. Further proof of its passage by the council was not necessary.

4. It is next insisted that the defendent McNutt stands before the court without a shadow of justification, because the letter or order addressed to him, as chief of the fire department, dated the twenty-first of October, 1884, and signed by acting mayor Westheimer, did not command or even request him to tear down the house.

The ordinance it will be seen makes it the duty of the mayor to issue an order to the owner of the building to have the same taken down, and, upon the neglect of

the owner to comply therewith within forty-eight hours after the service of the same, it is the duty of the mayor to cause the building to be removed. This order or notice was duly issued and served upon the plaintiff and he neglected to remove the building within the specified time. The ordinance calls for no other or further written order from the mayor. His verbal direction to any one to tear down the house was all that was necessary. Though the letter or order from acting mayor Westheimer to McNutt is not in words or form an order or even a request to tear down the house, still it is evident that it was understood by both parties as a direction to go on and enforce the ordinance. As a writ or written order was not necessary, the objection is not well taken.

5. The jury found that McNutt and the carpenters employed by him used due care in taking the house down, and no objections are made to the instructions relating to this branch of the case. The judgment is therefore affirmed. All concur.