ALBERT D. LEMMON v. THE TOWN OF GUTHRIE CENTER. IOWA, *et al.,* Appellant.

**Fire Limit Ordinance:** REMOVAL OF BUILDINGS. A building erected 4 in violation of a fire limit ordinance may be removed by the city without resort to judicial proceedings.

**Injunctions.** The fact that an unauthorized restraining order is 2 made in a notice given by the judge of hearing of an application for an injunction, does not make it error to issue a temporary injunction on the hearing.

INJUNCTION ORDER CONSTRUED. Where the plaintiff in an injunction suit, brought to restrain an incorporated town from removing 1 a building alleged to have been erected in violation of a fire limit ordinance, states that he intends to veneer the building, 4 an appeal by the town from a temporary injunction granting the relief prayed for, but authorizing the town to make a motion to dissolve it if the building is veneered within a certain time, does not raise the question whether the building was a violation of the ordinance.

REMOVAL OF BUILDING FROM FIRE LIMIT: *Authority of mayor.* Where, 1 the mayor of an incorporated town has no authority to hear a complaint or issue an execution for a removal of a building 3 erected in violation of a fire limit ordinance, the hearing of an application for an injunction to enjoin the town and its officers from removing the building may be had before the mayor ren-

ders a decision on a complaint asking the removal of such a building.

SAME. A fire-limit ordinance which permits the erection of veneered buildings without first obtaining a permit, but which authorizes the town to remove a building in conflict with the ordinance on two days' notice, does not render invalid an injunction restraining the town from interfering for eight days with a building which the owner intends to veneer, since he is entitled to a reasonable time to erect the kind of building authorized by the ordinance.

ADEQUATE REMEDY AT LAW: *Trespass.* Injunctions will lie to prevent an incorporated town from removing a building as an alleged violation of a fire-limit ordinance, since there is no adequate legal remedy for a wrongful removal thereof.

Review on Appeal: LEGALITY OF INJUNCTION: *Ruling on motion to dissolve essential.* Where a motion to dissolve a restraining order, contained in the notice of the hearing of an application for an injunction, is not passed on by the court making the order, its legality will not be considered on appeal.

*Appeal from Guthrie District Court.*—HON. J. H. APPLEGATE, Judge.

MONDAY, JANUARY 21, 1901.

An ordinance of the incorporated town of Guthrie Center fixed fire limits, and prohibited the establishment or erection of buildings or additions therein of wood or combustible materials, fixed a penalty for its violation, directed the mayor or marshal to notify any one violating the ordinance to desist therefrom, and, upon failure to desist or remove, as notified, within two days, authorized either the mayor or marshal to enter the premises, and abate or remove the buildings and addition at the owner's expense. The plaintiff, on the fourteenth day of June, 1899, removed a wooden structure, from ground on which it was then standing, 28 feet, to make way for another structure. Two days thereafter he was served with written notice that, unless the building was removed within two days, the mayor would proceed to do so under the ordi-

nance.  On June 17th he was notified that on the nineteenth, at 10 A. M., the marshal would file a complaint before the mayor, asking "a writ of execution for the purpose of abating and removing" the building, unless sooner placed beyond the fire limits, and requiring him to appear and defend.  At the time stated, and during the progress of this trial before the mayor, the plaintiff presented his petition to the district judge, praying for a writ of injunction.  The judge issued a notice of hearing at 1:30 o'clock P. M. of the same day, in which defendants were required "to leave the said building in the situation it is now in, and refrain from making any order in relation thereto."  Upon hearing, a temporary writ was ordered, which restrained defendants from interfering with the building, with permission to move for dissolution, "unless plaintiff on or before the thirtieth day of June, 1899, should comply with the ordinance of the town of Guthrie Center by properly inclosing the building in controversy in a suitable and substantial brick veneer."  From this order the defendants appeal.—*Affirmed.*

*Chas. W. Hill* and *Henry B. Holsman* for appellants.

*W. D. Milligan* for appellee.

LADD, J.—If the admonition of the judge in the notice of the hearing, not to interfere with the building, be regarded as a restraining order, no ruling was ever entered on the motions to dissolve.  These appear to be undisposed of, and, until some ruling by the trial judge or court is had, the propriety of making such an order without notice cannot be questioned in this court.  Even were it unauthorized, that fact would furnish no reason for not issuing the temporary writ after a full hearing.  Nor did the pendency of the proceedings before the mayor of Guthrie Center, in which a writ of execution directing the marshal to remove the building beyond the fire limit was sought, interpose any obstacle to granting the relief prayed.  Neither the

ordinances of the town nor the statutes of the state confer jurisdiction on the mayor's court to issue such a writ. Nor was any such action necessary. The ordinance empowered the mayor or marshal, in virtue of his office, in event of the owner's failure to desist or remove on two days' notice, "to enter on said premises, and abate or remove the same." No order or writ of execution was essential. A building erected in violation of an ordinance fixing fire limits may be torn down or removed without any judicial proceedings whatever. *Eichenlaub v. City of St. Joseph,* 113 Mo. 395 (21 S. W. Rep. 8, 18 L. R. A. 590); *Hine v. City of New Haven,* 40 Conn. 478; *King v. Davenport,* 98 Ill. 305; *Baumgartner v. Hasty,* 100 Ind. 575; *Klingler v. Bickel,* 117 Pa. St. 328 (11 Atl. Rep. 556); *McKibben v. Ft. Smith,* 35 Ark. 352. Delays of that character might endanger the public safety, and ought not to be tolerated. As the mayor was without jurisdiction, there was no occasion for postponing the hearing until he had rendered a decision.

II. The statute confers the power on towns and cities "to establish fire limits, and to prohibit within such limits the erection of any building or addition thereto" unless the outer walls be of a material named; and, as the plaintiff declared his intention to veneer the building, the order merely gave him an opportunity to do so, without deciding whether a removal from one lot to another or a different part of the same lot within the prescribed limits constituted an erection thereof within the meaning of section 711 of the Code. That question, then, is not before us. But see *Wadleigh v. Gilman,* 12 Me. 403 (28 Am. Dec. 138); *Brady v. Insurance Co.,* 11 Mich. 451; *Kaufman v. Stein,* 138 Ind. 49 (37 N. E. Rep. 333); *Brown v. Hunn,* 27 Conn. 332 (71 Am. Dec. 71). Whatever the conclusion on that point, it does not follow that removals may not be prohibited by an ordinance of the town or city, under a statute like ours, as a regulation against the danger by fire. The ordinance in this case contained no provision requiring the procurement of a permit preliminary to the erec-

tion or removal of a building, but it stipulated that "any frame building with four-inch veneer of the outer walls" and a roof of non-combustible material should be construed as complying with its conditions. Of necessity, the superstructure must be erected or located in some situation before the brick may be placed, and the owner is entitled to a reasonable time within which to accomplish this. The plaintiff appears to have contracted for a sheet-iron covering prior to the removal, but, upon discovering this did not comply with the ordinance, arranged to put on a brick veneer. The order allowed him eight days within which to accomplish this, and it cannot be thought an unreasonable time. The two days notice to desist or remove does not limit the time of completion; otherwise, the ordinance in effect, because of the brevity of period fixed, would prohibit the very structures it authorizes. Until the plaintiff had a reasonable time within which to put his building in the condition exacted by the ordinance, the officers had no right to tear down or remove it.

III. But it is said a trespass merely was threatened, and that for this the law affords ample remedy. It appears that plaintiff was about to make use of the building in which to store tools and materials during the construction of an addition to a brick block near by, that there was no other accessible shelter, and that the defendants proposed to remove it beyond the fire limits. The rule that equity will not interfere with a threatened trespass save to prevent irreparable injury has been too often declared for repetition. What will constitute such an injury is sometimes difficult to determine. The general grounds for such relief are enumerated in *Cowles v. Shaw,* 2 Iowa, 496; *City of Council Bluffs v. Stewart,* 51 Iowa, 385, and other cases. The entire question seems to hinge on whether the damages actually recoverable at law will, in the nature of things, afford adequate compensation; and the rule resulting from all the cases is perhaps more clearly stated by Pearson, J.,

in *Gause v. Perkins,* 3 Jones, Eq. 177 (69 Am· Dec. 728),. than elsewhere: "The words mean that which cannot be repaired, put back again, atoned. * * * The injury must be of a peculiar nature, so that compensation in money· cannot atone for it. Where, from its nature, it may thus. be atoned for, if in the particular case the party be insolvent, and on that account unable to atone for it, it will be consid-- ered irreparable." Mr. Freeman, in a note to *Jerome v. Ross,* found in 11 Am. Dec. 501, thus enumerates the reasons why "an injury resulting from trespass may be incapable of com- pensation": "(1) It may be destructive of the very sub- stance of the estate; (2) it may not be capable of estimation in terms of money; (3) it may be so continuous and per- manent that there is no instant of time when it can be said to be complete, so that its extent may be computed; (4) it may be vexatiously persisted in, in spite of repeated ver-- dicts at law; (5) it may be committed by one who is wholly irresponsible, so that a verdict against him for damages: would be entirely valueless; (6) it may be committed against one who is legally incapacitated from a beneficial use of the remedy at law. Generally, however, in cases where equitable relief is granted, the injury will be found to include several of these features." It needs no argument to show that the mere deprivation of the use of this building as a storehouse would not be an irreparable injury. If any there could have been, it was because the mischief threatened reached to the substance and value of the estate, and went to the destruction of it in the character in which it was en-- joyed. Thus a party may be enjoined from cutting down· trees *Musch v. Burkhart,* 83 Iowa, 301; *Shipley v. Ritter,* 7 Md· 408 (61 Am. Dec. 371). And see, generally, cases collected in which the injury threatened has been adjudged of such a character as would tend to destroy the estate or its· enjoyment in note to *Dudley v. Hurst,* 1 Am. St. Rep. 368 (s. c. 8 Atl. Rep. 901). This building appears to have been permanently located, and a part of the land. Was its re--

:moval beyond the fire limits such an injury to the real estate as would justify an injunction without any showing of insolvency on the part of defendants? In England, "if an alleged trespasser is about to tear down a dwelling house, an injunction will be issued without an averment that he is insolvent; for although, with money enough, as good or a better house can be built, still it involves a matter of feeling ——there is an attachment to the house in which our ancestors lived." *Gause v. Perkins, supra.* What force might be given to such a sentiment in this country, where little attention is bestowed on the incident of lineage, need not now be discussed. In *Echelkamp v. Schrader,* 45 Mo. 505, the defendant was enjoined from sawing a double house in two at what he supposed the line, but in fact over the portion occupied by plaintiff three feet. So, in *De Veney v. Gallagher.* 20 N. J. Eq. 33, a party was restrained from removing 10 inches of a dwelling house which he supposed extended that distance over the boundary. These decisions seem to rest on the principle that a person will not be disturbed in the occupancy of his dwelling house pending the adjustment of a suit over a boundary line. In *Clowes* v. *Beck,* 13 Beav. 347, the removal of the material near plaintiff's mansion house , exposing it to the encroachments of the sea, pending the institution of an action at law, was enjoined. In *Lewis v. Town of North Kingston,* 16 R. I. 15 (11 Atl. Rep. 173, 27 Am. St. Rep. 725), the road supervisors were enjoined from removing a building from plaintiff's lot; but this appears to have been, in part at least, on the ground that it was proposed to grade and obliterate the boundaries· In *District Tp. of Lodomillo v. District Tp. of Cass,* 54 Iowa, 117, the removal of a school house was enjoined, for that its use was essential to enable the plaintiff to perform its duty in maintaining the public schools. In *Bank v. Sarlls,* 129 Ind. 201 (28 N. E. Rep. 434, 28 Am. St. Rep. 185), and *Heffran v. Hutchins,* 160 Ill. 550 (43 N. E. Rep· 709, 52 Am. St. Rep.

353, the removal of buildings to lots within the fire limits was enjoined. See, also, *Ryan v. Brown*, 18 Mich. 196; *Whitmer's Appeal*, 45 Pa. St. 455; *Weigel v. Walsh*, 45 Mo. 560. But in these cases some other ingredient was superadded to the destruction of the buildings on the land; *i. e.*, that which was essential to its enjoyment, regardless of the money measure of the injury. An examination of all the cases, as is well observed by Mr. Freeman in his note to *Jerome v. Ross, supra*, indicates a strong tendency to grant equitable relief whenever the trespass permanently diminishes the substance of the estate in that which constitutes its chief value, without reference to the fact that the value may be measured in money, on the ground that the plaintiff is entled to have the identity and integrity of his estate preserved. The removal of this building was an interference with the real estate, such as to absolutely deprive the plaintiff of the beneficial enjoyments of its present use. No one can say how much advantage is to be derived from a naked lot so located. Besides, he had the right to the occupancy of the land with the building thereon. He was entitled to its enjoyment, rather than to the damages occasioned by stripping it of the very improvement designed for his particular purposes. The structure, in that sense, was part of the land, and the threatened injury went to the destruction of it in the character in which it was enjoyed; and when the destruction or removal of a permanent structure, which in law is deemed a part of the real estate, and designed for the owner's particular use, is threatened, we think he should be protected in its enjoyment, and to that end a writ of injunction may issue. There is a wide difference between such a case and the mere removal of stone or earth, which in no way interferes with occupancy and the only damage is the value or cost of replacing. —AFFIRMED.