CITY OF SHENANDOAH, Appellee, v. GEORGE M. REPLOGLE et al., Appellants.

**CONSTITUTIONAL LAW:**   Police Power and Due Process—Recon-struction of Dilapidated Buildings.   An ordinance which prohibits the reconstruction, within the city fire limits, of a building which has been practically wrecked by fire, unless the reconstruction is made with fireproof material, and authorizing the removal of buildings constructed in violation of the ordinance, is a valid exer-cise of the police power; and ''due process'' is fully satisfied by a provision therein providing for notice and appeal prior to the tear-ing down of such buildings.

*Appeal from Shenandoah Superior Court.*—FREDERICK FISCHER, Judge.

June 24, 1924.

Rehearing Denied September 20, 1924.

Action in equity by the city, to enjoin defendants from rebuilding a frame building within the fire limits in the city, which building had been partially destroyed by fire. The trial court found for plaintiff, and by the decree provided that the defendants be perpetually enjoined from rebuilding and constructing the building within the fire limits with inflammable materials, contrary to the ordinance of the city, and ordered defendants to forthwith remove the building constructed in violation of the ordinance; and in default thereof, the sheriff was commanded to remove the same at the cost of the defendants. The defendants appeal.—*Affirmed.*

*Ferguson, Barnes & Ferguson,* for appellants.

*L. H. Mattox* and *Thomas W. Keenan,* for appellee.

Preston, J.—The building in question was a frame all-wood structure, 60x16 feet, and 12 feet high, belonging to the defendants, or some of them. It had been used for storage purposes. The fire occurred December 30, or 31, 1921. Ten or twelve days thereafter, the state fire marshal served upon the owners a notice, under Section 2468-j, Code Supplement, 1913, requiring them to remove the warehouse from the premises forthwith, and to comply with the order and law of the state and the ordinances of the city of Shenandoah. The ordinance was passed a few days thereafter. Defendants began to rebuild, or, as appellants contend, to repair the building, without securing a permit, as required by the ordinance. The fire marshal was not proceeding to remove the building or to carry out the order, nor is the action brought by defendants to enjoin him from so doing. The action is by the city, to enjoin the defendants from violating the ordinance, and was brought after the notice by the fire marshal.

The fire marshal statute provides, in substance, that he, or others named, shall, whenever they shall find a building which,

by want of proper repair, age, dilapidated condition, or for any cause, is especially liable to fire, and is so situated as to endanger other buildings or property, etc., order the same to be removed or remedied forthwith; provided that, if the owner or occupant shall deem himself aggrieved by such order, he may, within 48 hours, appeal to the state fire marshal, and the cause of complaint shall be investigated, and unless rejected, the order shall remain in force. The statute further provides for a fine for failure to comply with the order, from which a right of appeal shall be granted; and that nothing therein shall be construed to affect or limit local ordinances or regulations; but that the jurisdiction of the state fire marshal shall be concurrent with that of the municipal authorities.

Since the fire marshal was not proceeding to enforce his order, we think it unnecessary to discuss appellants' objections to this statute. We may remark, in passing, that the position of appellee is that, after the service of notice, the defendants had two rightful courses open,—to comply with the order, or to appeal to the state fire marshal,—neither of which was done; and that, in any event, defendants were doing a wrongful act; and were violating the ordinance, and may be enjoined.

1. The ordinance provides in part that:

"The erection of all buildings or structures of every kind, and additions thereto or substantial alterations thereof, involving *partial rebuilding,* are prohibited within such limits, unless the outer walls of the same are constructed only of brick, stone, tile, concrete, cement or mortar, and the roof constructed of fireproof material."

It also provides that any building erected or partially erected or constructed in violation of the ordinance is declared a nuisance, and may be abated under the direction of the city marshal, or that an action by injunction may be begun in the name of the city, to prevent the contemplated illegal act or acts; provided that, before any action is had in the way of abatement, a notice of not less than twenty-four hours shall be given the owner, agent, etc., of the proposed action, requiring him to desist from further violation of the ordinance.

Appellee contends that defendants were proceeding to make

additions or substantial alterations in the building, involving partial rebuilding, contrary to the ordinance; while appellants say that they were proceeding to repair the building, and that this does not come within the ordinance; that the building is standing pretty much as it was before the fire. This is a question of fact. The defendants produced no witnesses. Referring as briefly as may be to the evidence, it appears that, as a result of the fire, about three fourths of the roof was entirely gone. The part of the roof not destroyed was damaged some all over; the tops of the partitions were burned "quite a bit," as the witnesses put it,—the top three or four feet were damaged; the inside of the walls was burned quite a bit along the roof; holes were burned through the lining and the siding, showing on the outside and extending downward nearly to the ground in one place; holes were cut in the siding by the firemen; it would take 210 feet of new siding to repair the outer walls; the entire building, foundation and all, would cost about $800 to build; the inside wall, or sheeting, at one end is burned entirely up at the top; south gable was burned out as far down as the plate; the walls of the two south rooms were burned "quite bad;" the walls of the north room were burned some, but were in a good substantial condition; reroofing would cost $238. This does not include repairing the inside walls or the sheeting. The surroundings are described, and a fireman testifies that the building is dangerous to surrounding buildings and property, because adjacent to wooden buildings, high-tension wires, and so on. Photographs of the condition of the building appear in the record.

Without further discussion, it seems quite clear that the building was in a dilapidated condition, or more properly speaking, perhaps, practically a wreck, incapable of use as a building without being partially rebuilt.

2. It is further contended by appellants that, if the ordinance be construed to cover the rebuilding operations, it is unconstitutional under the state and Federal Constitutions, in that it deprives defendants of their property without due process of law, and takes the property for public use without compensation. They concede that, under our statutes, the city can

fix certain fire limits and prescribe the kind of buildings which may be erected therein; and that the city may prevent the erection of buildings prohibited by such ordinances, and may tear down buildings which have been erected contrary to the ordinance. But it is said that this doctrine and the statute would not apply to the repairing of the building which was already in existence. Appellants say that two propositions are advanced by the answer: First, that the statute amounts to the taking of property for a public purpose without compensation; second, that it amounts to the taking of property without due process of law. On the proposition as to what is a taking of private property for a public purpose, requiring compensation, they cite *Portsmouth Harbor L. & H. Co. v. United States*, 260 U. S. 327 (43 Sup. Ct. Rep. 135); *United States v. Welch*, 217 U. S. 333; *Pumpelly v. Green Bay Co.*, 13 Wall. (U. S.) 166; and like cases. In the first named case, the government installed a coast defense battery, not simply as a means of defense in war, but for target practice, over a strip of ground, depriving the owner of its use. Another case is where a private way across lands of another was cut off. They also cite *First Nat. Bank v. Sarlls*, 129 Ind. 201, holding that an ordinance which arbitrarily attempts to take from the owner of property all power to make repairs necessary for its preservation is invalid, and that, before the destruction or removal of a building, it must appear that it has become a nuisance.

On the other hand, it is contended by appellee that an ordinance of this character is the exercise of the police power, and is not a declaration of forfeiture; that, though the removal of the building or its demolition may cause loss to the owner, there is no forfeiture of it to the public or to anyone else. On these propositions appellee cites *Baumgartner v. Hasty*, 100 Ind. 575 (50 Am. Rep. 830), which cites *Field v. City of Des Moines*, 39 Iowa 575; *State v. Lawing*, 51 L. R. A. (N. S.) 62, note; *Davison v. City of Walla Walla*, 52 Wash. 453 (21 L. R. A. [N. S.] 454); *Eichenlaub v. City of St. Joseph*, 113 Mo. 395 (18 L. R. A. 590); *McKibbin v. Fort Smith*, 35 Ark. 352; *Klingler v. Bickel*, 117 Pa. 326 (11 Atl. 555); *Hine v. City of New Haven*, 40 Conn. 478; *State v. Johnson*, 114 N. C. 846 (19

S. E. 599); *Lemmon v. Town of Guthrie Center,* 113 Iowa 36. The *Lawing* case, supra, at page 68, after stating the rule that an act should not be held unconstitutional unless it is clearly so beyond a reasonable doubt, and other questions as to police power, holds that:

"The action of the legislature authorizing the enactment of this ordinance, and of the board of aldermen in passing it, is not a taking of private property for public uses; but it is the restriction of the defendant in the unlimited use of his property by virtue of the police power * * * for the purpose of protecting the community from the dangers to which the public would be exposed by the continuance of a wooden building in that locality, by the requirement that, when it becomes unusable by decay, it shall be replaced by a safer construction than wood."

We think the same rule applies where, as here, there had been a partial destruction by fire, rather than by decay. In the same case the court said, at page 67:

"It is urged that the placing of a metal roof upon this wooden ell makes it not more dangerous, but less so. But this loses sight of the object of the ordinance, which is not only to prohibit the building of wooden buildings within the prescribed limits, but, while not requiring the pulling down of the wooden buildings now within the limits, prohibits their repair in order to prevent their indefinite continuance therein, as would be the case if they can be repaired from time to time. As was said in *State v. Johnson,* supra, this does not prohibit slight repairs, such as putting in broken windows, or hanging a shutter, or fixing up the steps. But it does prohibit such repair, as in this case, of putting on a new roof, which makes the building habitable, and thereby insures its continuance. This is contrary to the spirit and the letter of the ordinance, and defeats its purpose, which is to permit only brick, concrete, or stone buildings to be erected, and contemplates the discontinuance of wooden buildings as fast as they become by decay unfit for further use or habitation. The substantial repair of such buildings is therefore forbidden."

In the Iowa case, *Lemmon v. Town of Guthrie Center,* supra, the property owner sought an injunction against the city.

The trial court ordered that a temporary injunction should issue "unless *plaintiff* on or before [a certain date] should comply with the ordinance of the town * * * by properly inclosing the building in controversy in a suitable and substantial brick veneer." The order was affirmed. It was held that the plaintiff had a reasonable time within which to put his building in the condition exacted by this ordinance. We said:

"It does not follow that removals may not be prohibited by an ordinance of the town or city, under a statute like. ours, as a regulation against the danger by fire."

The cases cited by appellants are not contrary to this doctrine, in a case of this character.

3. It is thought by appellants that they are deprived of their rights under the due-process clauses, because there is no provision for notice and a hearing. The fireman statute and the ordinance provide for appeals, and the ordinance provides for notice before abatement by the city marshal. We have seen that neither the city marshal nor the fire marshal is attempting abatement. We held in the *Lemmon* case that injunction would lie, and that a building erected in violation of an ordinance fixing fire limits may be torn down or removed without any judicial proceedings. In this equitable action, defendants were given a hearing after notice, and every question is presented which could have been raised by appeal or otherwise, before the abatement by the sheriff, under the decree of court.

4. After the appeal to this court, a restraining order was issued, permitting appellants to place a temporary covering on the roof of the building, to preserve it from the weather and waste temporarily, pending the appeal, but without any right to use the building for storage purposes. The decree being held proper, the restraining order is now vacated, that the decree may stand in all respects in full force.

We are of opinion that the decree of the trial court was right. It is, therefore, affirmed, and the restraining order vacated.—*Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.