**McCURLEY v. CITY OF EL RENO et al.**

No. 18992. Opinion Filed Sept. 10, 1929.

A. G. Morrison and A. L. Morrison, for plaintiff in error.

J. N. Roberson, for defendants in error.

BENNETT, C. The parties will be referred to as they appeared below. Plaintiff's petition alleged that he had been granted a permit to build a filling station on right of way of street railway company of El Reno; that when he began to build, the city revoked the permit and caused plaintiff's arrest for violation of the zoning ordinance of said city and caused his employees to cease work; that said zoning ordinance No. 1061 was not passed as required by chapter 178, Sess. L. 1923, and was void; that it was unreasonable and violated the state and federal Constitutions. Plaintiff demanded permanent injunction. The answer is, in effect, a general denial.

An agreed statement of facts is as follows: That plaintiff leased from street railway company part of its right of way April 28, 1927; that a frame building permit No. 268 was issued plaintiff April 26, 1927. May 13, 1927, the city, by letter, revoked said permit because issued in error and in violation of ordinance No. 1061. May 12, 1927, plaintiff had two men and on May 13th three men work half day on foundation; that ordinance No. 1061 was passed and approved April 12, 1927, and was regularly published two days later and provided that it became effective upon publication.

May 2, 1927, commissioners of El Reno appointed a committee to recommend parties from whom the zoning commisssion and board of adjustment should be selected, and that said committee reported such names at a meeting held May 25, 1927, when the zoning commission and board of adjustment were appointed as provided by the ordinance; that neither the zoning commission nor the board of adjustment has made report or given the 15 days' notice and no public hearing has been had as required; that plaintiff made no application to anyone for a hearing; that plaintiff and Mr. Holden, agent of the railway company in El Reno, went to the city manager and informed him that they wished to build a filling station on right of way of street railway, and he promised the permit, but later said manager filed two complaints against plaintiff charging him with violation of ordinance No. 1061. The land is on right of way of railway company and in a district in El Reno in which the erection of such a building is prohibited by the ordinance.

Oral proof showed the location within a residential district of the city. After introduction of evidence, the court found all issues against plaintiff and in favor of defendants, from which plaintiff appeals.

Six specifications of error are made, but plaintiff's brief confines his contentions to three propositions: (1) That the ordinance against the enforcement of which plaintiff brought this action was not passed in conformity with chapter 178, Sess. L. 1923, and is, therefore, null and void. Plaintiff sets out that no zoning commission had been appointed; that no report of such commission had been filed; and that no notice of any public hearing was given and no public hearing had prior to the passing of ordinance No. 1061. Plaintiff quotes sections 4 and 6 of said Session Laws as follows:

"Section 4. The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented or changed. However, no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality.

"Section 6. In order to avail itself of the powers conferred by this act, such legislative body shall appoint a commission to be known as the zoning commission to recommend the boundaries of the various original districts and to recommend appropriate regulations to be enforced therein. Such commission shall make a preliminary report and hold public hearings thereon before submitting final report; and such legislative body shall not hold its public hearings or take action unless it has received the final report of such commission. * * *"

We are of the opinion that the provision that no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, etc., is a provision that had in contemplation and applied to the adoption of the permanent comprehensive zoning ordinance under said act, and that it was not intended to and does not affect a temporary ordinance, such as 1061. From the clear words of such ordinance, giving such words their ordinary interpretation, taking into account the purpose and object thereof, also having in mind that ordinances should be so interpreted as to harmonize with other ordinances, if possible, and giving heed also to the title to the act, we think it clear that ordinance No. 1061 was only a temporary and incidental step taken by the council before putting into effect the comprehensive permanent zoning ordinance provided for under chapter 178, Sess. L. 1923. It was a precautionary measure to prevent those who might be tempted to forestall the ordinance and neutralize its effect.

In the first clause of ordinance No. 1061 is set out the following:

"Whereas, the governing body of the city of El Reno has heretofore taken the proper action as required by law for the compilation of a comprehensive zoning ordinance for this city, and

"Whereas, no money was appropriated during the current fiscal year to devote to this purpose, and no money will in any event be available until July 1, 1927, and the proper study, holding of public hearings, compilation of zone maps, etc., cannot be completed with reasonable satisfaction to all concerned within at least a year from that date, and

"Whereas, it is necessary, in view of the intention thus declared for the governing body of this city to exert some measure of control over the construction of structures and use of property to the end that its avowed purpose shall not be defeated in the interim, therefore,

"Be it ordained by the board of city commissioners of the city of El Reno, state of Oklahoma:

"Section 1. This ordinance hereby is declared to be enacted for the preservation and promotion of the public health, welfare and safety, and for the preservation and promotion of the convenience, good order, tranquility, prosperity, happiness, morals, best interests or general welfare of the inhabitants of the city of El Reno, * * * and to encourage and facilitate the orderly growth and expansion of said municipality, during the interim between the time of its adoption and the adoption of a comprehensive zoning ordinance according to regulations now prescribed by law. * * *"

The title of the ordinance is as follows:

"Ordinance No. 1061. An ordinance providing for the zoning of the city of El Reno during the interim between the passage thereof and the adoption and passage of a comprehensive zoning ordinance as provided in chapter 178, S. L. 1923."

Part of section 28, art. 8 of the ordinance is as follows:

"An emergency is hereby declared to exist by reason of which it is deemed necessary for the immediate preservation of the public health, * * * that this ordinance take effect and be in full force immediately upon its passage, * * * and remain in effect until the 1st day of July, 1928, unless sooner superseded by a comprehensive zoning ordinance adopted as provided by law."

A casual reading of these excerpts discloses that this was not, and was not intended to be, a comprehensive zoning ordinance, but was intended only to prevent a forestalling and evasion of the terms of the permanent zoning ordinance to the passage of which the council had committed themselves. The title of ordinance No. 1061 shows that the temporary ordinance was not the one contemplated as a comprehensive zoning ordinance under chapter 178, Sess. L. 1923.

It is true that this temporary ordinance divided the city into districts and prohibited the erection of business buildings within those districts set apart to residences. But these restrictions were limited to one year. It will be noted that under section 22, a board of adjustment was provided to regulate complaints, and subsection (b) under this section uses these words:

"For the purposes of this interim ordinance appeal from the decision of any administrative officer of the city seeking to enforce this ordinance shall be taken to the board of adjustment"

—and in subsections (c) and (d), appeals are provided for dissatisfied property owner, and section 23 provides for a relaxation of these rules and regulations in cases where they are deemed too rigorous.

Fowler v. Obier, City Building Inspector, et al., decided May 29, 1928, 224 Ky. Rep. page 742, is a case strikingly similar to the one at bar. City of Louisville, under general law, sought to zone said city and passed a temporary ordinance "to prevent a change in condition in so far as possible after the city planning commission was created," and under the terms of which no business house could be built in a residence district for a period of two years. The court upheld the temporary ordinance and indicated that it was known to everyone that zoning ordinances could not be promulgated, passed, and put into effect promptly, and that to permit selfish or designing persons or others to make use of the time between the proposed legislation and the final consummation thereof to build to suit themselves would destroy, in effect, the value of such zoning ordinances. The 15th paragraph of the syllabus reads as follows:

"In passing upon the validity of a temporary ordinance relative to city's building regulations, such ordinance to be enforced pending investigation for and enactment of a permanent zoning ordinance, and attacked as unreasonable and arbitrary, Court of Appeals would not scrutinize temporary ordinance with same degree of care that would if it had been enacted as a permanent ordinance."

This is a well-considered case and the argument of the proposition by the court leaves little to be added.

In Miller et al. v. Board of Public Works

of City of Los Angeles et al. (Cal.) 234 Pac. 381, the 13th and 14th paragraphs of the syllabus are as follows:

"It is a matter of common knowledge that a comprehensive zoning plan cannot be made in a day, and therefore court may take judicial notice that it will take much time to work out details of plan, and that it would be destructive if, during incubation of plan, parties should be permitted to enter on course of construction which might defeat ultimate execution of plan.

"That a comprehensive zoning plan had not matured to point of being an existing ordinance at time that an emergency zoning ordinance was enacted does not detract from validity of emergency zoning ordinance, on theory that zoning ordinance may not be ultimately enforced, as presumption that council will not fail in performance of official duty must prevail, and hence such emergency zoning ordinance, being part of comprehensive plan which has relation to welfare of city, must be held to be a valid exercise of police power."

Plaintiff there sought by mandamus to compel issue to plaintiff of permit for a four-family flat dwelling. At the time plaintiff first made application to the board for a permit, an existing zoning ordinance of Los Angeles did not prohibit the erection of such buildings in residence district No. 20 wherein plaintiff's lot was located. A permit for such building was therefore issued. Shortly thereafter the permit was revoked by the board because city council was contemplating a comprehensive zoning plan for the entire city, and that, as part of such scheme, an ordinance would be enacted prohibiting erection of four-family flats in that part of city wherein plaintiff's property was located. September 1, 1921, this action was instituted by filing of a complaint to compel issuance of a permit. September 6th city council of Los Angeles passed an emergency ordinance, declaring it to be unlawful "for any person, * * * to erect * * * any building * * * which shall be used for, * * * housing more than two families together with its usual accessories."

The only defense by the board was the last-mentioned ordinance. The trial court held said ordinance to be a valid exercise of the police power, and denied the writ of mandate sought by plaintiff. No point is made that the board has not the power to revoke a permit once it has been duly issued, nor that the ordinance, if valid, may not operate retroactively to nullify a permit previously issued. The court says:

"It may also be noted, at the outset, that the ordinance in question is prohibitory in its nature and that the prescribed prohibition is absolute. The ordinance does not attempt to designate and regulate the materials to be used in the buildings, nor does it purport to regulate the height, area, and architectural design of such buildings as may be erected within the designated district. It prohibits the construction of any building, irrespective of height, area, bulk, structural design or architectural features, 'designed or intended to be used for the housing of more than two families.' It is, in short, purely prohibitory zoning directed solely to use and occupation. The sole question presented is whether or not the ordinance in controversy is a rightful exercise of the police power conferred upon municipalities."

And the court says further:

"The police power of a state is an indispensable prerogative of sovereignty and one that is not to be lightly limited. Indeed, even though at times its operation may seem harsh, the imperative necessity for its existence precludes any limitation upon its exercise save that it be not unreasonably and arbitrarily invoked and applied. Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927; District of Columbia v. Brooke, 214 U. S. 138, 149, 29 S. Ct. 560, 53 L. Ed. 941."

We shall not pursue the argument as to the necessity, purpose and intent of the police power further than to say that it is perhaps the one power which, under the interpretation of our courts, has kept step with the advance in civilization and is now regarded as sufficiently elastic to meet the imperative demands of our complex city life. A discussion of these matters may be found, however, in the following cases: Euclid v. Ambler Realty Co., 71 L. Ed. 303; Streich v. Board of Education, 34 S. D. 169, 147 N. W. 779, L. R. A. 1915A, 632, Ann. Cas. 1917A, 760; C., B. & Q. Ry. Co. v. Illinois, 200 U. S. 561, 50 L. Ed. 596; Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487.

There is an instructive case entitled Ware v. City of Wichita, 113 Kan. 153. In that case L. B. Ware, plaintiff, owned a lot in the residence district on which he proposed to erect a business building. Shortly prior to his application for a permit, the city enacted an ordinance creating a planning commission which had embarked on its duties of planning the systematic development of the municipality, but its work was not quite ready to be submitted to the city government for consideration and action. But in view of the impending completion of the plan of development, which contemplated the creation of zoning districts within the city and which would bar the construction of a

business building on such locations as that of plaintiff's lot, a permit was denied him, and he brought mandamus against the city. Plaintiff prevailed in that action, and an appeal was taken. About the time the mandamus action was filed, the city brought suit for injunction against Ware to restrain him from erecting the business building. He filed a cross-petition asking that the city be restrained from interfering with the construction of his building. Ware prevailed in that action, it being decided on the same day the writ of mandamus was allowed to him.

About the time the mandamus and injunction suits were decided, the development plan by the city was finished, and thereupon the city enacted an ordinance dividing the city into zones and restricting the location and character of buildings and trades therein. Upon adoption of this ordinance the city brought suit to enjoin Ware from building in violation of the terms of said ordinance. A temporary injunction was issued. Defendant moved to set it aside, among other things asserting the judgment in his favor in the mandamus action and in the injunction case, also that the relief sought by the city would be retroactive; that the ordinance violated the Fourteenth Amendment and the uniformity clause of the state Constitution, and that he was deprived of his property without compensation and that the ordinance was passed after his rights had accrued, and that it was unreasonable.

The court said in the opinion:

"When the mandamus and first injunction suits were decided, there was no zoning ordinance; hence, the lot owner might very properly have prevailed in those actions. But when the zoning ordinance was adopted (and its enactment followed immediately on the heels of the earlier litigation and before the defendant had done anything substantial towards the construction of the proposed building), it governed the then existing rights of the defendant property owner. Counsel for defendant cite cases which declare the general rule that a statute or ordinance should be construed as dealing only with conditions arising after its enactment. and that legislation should not be given a retrospective operation unless such intention is unequivocally expressed. But this zoning ordinance was undoubtedly designed as a police regulation to arrest the further indiscriminate construction of miscellaneous business buildings in the residential districts of the city, as well as to provide for the future harmonious development of the town. * * * Such municipal legislation is not invalid, and the fact that the defendant had applied for a permit, and that his right thereto as of the date of his application had been adjudicated in his favor, did not prevent the new ordinance, when it was enacted, from governing the situation. (Shepherd v. Kansas City, 81 Kan. 369, 375, 105 Pac. 531.)"

The court says the permit had not issued, but proceeds:

"Even if the permit had been actually granted, it could have been revoked after the passage of the ordinance, if done with reasonable promptness and before the situation had been materially changed to the prejudice of the defendant. (City of Des Moines v. Manhattan Oil Co., 193 Iowa, 1096, syl-No. 2.)"

The court, in discussing how far cities may go under this police power and without express authority, quotes from the opinion of Justices of Massachusetts, 234 Mass. 597, 127 N. E. 525, in part as follows:

"The suppression and prevention of disorder, the extinguishment of fires and the enforcement of regulations for street traffic, and other ordinances designed rightly to promote the general welfare, may be facilitated by the establishment of zones or districts for business as distinguished from residence."

To the same general effect see: State ex rel. Twin City B. & I. Co. v. Houghton, 144 Minn. 1; State v. Wilson, 101 Kan. 789, 168 Pac. 679; City of Stockton v. Frisbie (Cal.) 270 Pac. 270; Gorieb v. Fox, 274 U. S. 603.

The argument that the ordinance is retroactive is discussed and repudiated in State ex rel. Civello v. New Orleans (La.) 97 So. 440, 33 A. R. L. 260, which is referred to approvingly by our court in Baxley v. City of Frederick, 133 Okla. 84, 271 Pac. 257:

"The term 'police power' comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, upbuilding, and advancement of the public weal, and protection of the public interests.

"It is plastic in its nature and will expand to meet the actual requirements of an advancing civilization and adjust itself to the necessities of moral, sanitary, economic, and political conditions." Ex parte Tindall, 102 Okla. 192, 229 Pac. 125, citing Magnolia Petroleum Co. v. Wright, 124 Okla. 55, 254 Pac. 41, and Muskogee v. Morton, 128 Okla. 17, 261 Pac. 183.

Section 4547, C. O. S. 1921, is in part as follows:

"The mayor and council shall have the care, management and control of the city and its finances, and shall have power to enact, ordain, modify or repeal any and all ordinances not repugnant to the laws of the United States and the Constitution and laws of this state, as they shall deem expedient

and for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, and the benefit of trade and commerce, and the health of the inhabitants thereof, and such ordinances, rules and regulations as may be necessary to carry such power into effect."

This authority is also repeated in section 4576, C. O. S. 1921.

The proof here indicates that the site of proposed gas station was in a residence district; that city council were in good faith seeking to preserve such district as such. There is no showing of bad faith or caprice. The trial court held, and we think properly, that this ordinance was reasonable and not unduly oppressive. Applying the principles approved in the foregoing cases, we hold that the temporary ordinance was valid and violated no statutory or constitutional right of plaintiff.

Plaintiff's second contention is that under section 10, chap. 178, Sess. L. 1923, the city had no power to restrict lands upon which plaintiff intended to erect his station. The following words of said section are relied on:

"In no event shall any provision of this act apply to any property of any railway company or terminal company."

The only interpretation of this provision at which we can safely arrive is that it was intended to affect only the property of a railroad or terminal company used or useful for the purposes of such company. It is too clear for argument that the Legislature did not have it in mind to pass a law which would permit a railroad or terminal company to defeat the object and purpose of a comprehensive zoning ordinance passed for the benefit of the entire city. We do not hold that a railroad or terminal company may not erect a building on its right of way for its own proper purposes without conforming to the requirements of said zoning ordinance, but we could not agree to the proposition that either had a right to lease its right of way (ostensibly condemned for the service of the public) to an individual for the purpose of operating gasoline filling stations, soap factories, or the like, and thereby afford the lessee the right to use the property for a business not authorized under its charter, and at the same time furnish him immunity from regulations imposed by the city on other private parties similarly situated. We think this requires the citation of no authority as the proposition appears to us clear on its face.

The third and last contention is that the city, after granting a building permit, cannot revoke same after permittee has, in good faith, commenced work thereunder.

Plaintiff cites several cases in support of his contention. An ordinance of the city is notice to the public. Section 4797, C. O. S. 1921. At the time of granting the permit, plaintiff had constructive knowledge that the permit was in violation of ordinance No. 1061, and of this also the city manager had like knowledge. In the case of Magruder v. Redwood City et al. (Cal.) 265 Pac. 806, it is held:

"An ordinance of a municipality when once legally adopted becomes binding upon all the citizens thereof, officers as well as private citizens, and it is the sworn duty of those officers, charged with its enforcement, to prosecute all violations thereof. This duty is not a personal duty that can be waived at their will, nor can they be estopped by any action of theirs from the faithful performance of the same. There is no merit in this contention of appellant."

In case at bar the evidence would warrant the finding that the permit was issued by mistake and in violation of ordinance. A permit issued under a mistake of fact may be revoked. Nolan v. Blackwell, City Supt. of Buildings, et al. (Wash.) 212 Pac. 1048. A building permit issued in violation of law or under mistake of fact confers no right. O'Bryan v. Highland Apartment Co., 128 Ky. 282, 108 S. W. 257; Eichenlaub v. St. Joseph, 113 Mo. 395, 21 S. W. 8; Meltzer v. City of Chicago, 152 Ill. App. 334; Averch v. City and County of Denver et al. (Colo.) 242 Pac. 47; 4 R. C. L. 402. Many other cases might be cited.

Plaintiff's position is substantially unchanged. He had four or five men do a half day's work on his foundation. We can conceive of no sound reason why the city should be estopped from compelling the observance of its ordinance, or why it may not revoke the permit granted under the facts in this case. The judgment of the trial court was proper.

TEEHEE, FOSTER, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.